RG-2000-02                                                                  1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Gasolinas de Puerto Rico Corporation<br>          Recurrente<br><br>             v.<br><br>Richard F. Keeler Vázquez,<br>Registrador de la Propiedad de Caguas<br>      Recurrido | Recurso Gubernativo<br><br>2001 TSPR 158<br><br>155 DPR ____ |

Número del Caso: RG-2000-2

Fecha: 15/noviembre/2001

Abogado de la Parte Recurrente:
                              Lcdo. Roberto López García

Abogado de la Parte Recurrida:
                              Por Derecho Propio

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Gasolinas de Puerto Rico
Corporation

  Recurrente,

  v.                                          RG-2000-2

Richard F. Keeler Vázquez,
Registrador de la Propiedad
de Caguas

  Recurrido


Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 15 de noviembre de 2001.


El Recurso Gubernativo instado exige que consideremos, entre otras cosas, asuntos relativos a la facultad calificadora del Registrador de la Propiedad, así como el efecto de haberse presentado un documento en el Registro de la Propiedad acompañado de una Minuta de Asiento de Presentación con el número de la finca equivocado. Por los fundamentos que siguen, confirmamos solamente la notificación de aquella falta relativa al requerimiento que hiciera el Registrador de un permiso de uso como documento complementario. Revocamos, sin embargo, las demás notificaciones de defectos sujeto a lo que aquí se dispone.

Los hechos pertinentes son los siguientes.

I

Mediante la Escritura Pública número ocho (8), otorgada el 18 de abril de 1997 ante el notario público Emilio Cancio Bello, Gasolinas de Puerto Rico Corporation (en adelante "G.P.R.C.") tomó en arrendamiento por quince (15) años la finca número 30,049, inscrita al folio 75 del tomo 894, Sección Primera de Caguas, de los esposos Héctor J. Rodríguez Reyes y Julia Rosalinda Beltrán Rodríguez. La propiedad arrendada es una segregación de la finca número 2,264, inscrita al folio 148 del tomo 163. En la mencionada escritura compareció en representación de G.P.R.C. su Presidente, Rafael Aníbal Toro Sánchez. Su capacidad representativa fue acreditada mediante una resolución corporativa con fecha del 30 de abril de 1991, certificada por la Subsecretaria de la Junta de Directores ante notario público el 7 de mayo de 1991.

El 5 de mayo de 1997, la escritura de arrendamiento se presentó para inscripción en el Registro de la Propiedad. Sin embargo, en el espacio de la Minuta de Asiento de Presentación correspondiente al número de la finca, se indicó erróneamente que la finca objeto del arrendamiento era la número 2,264 y no la finca número 30,049. El número indicado en la Minuta corresponde a la finca matriz de la cual se segregó la finca objeto de la escritura de arrendamiento. Posterior a la presentación, el original de la Minuta fue alterado en el Registro tachándose el número de la finca principal e insertándose en su lugar el número de la finca arrendada. La identidad de la persona que realizó esta corrección, así como el momento en que se hizo, son desconocidos.[1]

Luego de examinar los documentos ante sí, el Registrador de la Propiedad negó la inscripción solicitada y notificó las siguientes faltas: primero, que debía presentarse nuevamente la escritura de arrendamiento y su Minuta de Asiento de Presentación sin tachaduras y con el número de finca correcto; segundo, que en la certificación emitida por la Subsecretaria de G.P.R.C., acreditando la capacidad representativa de su Presidente, faltaba adherirle a la primera página el sello corporativo o el del notario; tercero, que dicha certificación no es de fecha contemporánea al negocio jurídico expresado en la escritura de arrendamiento y; cuarto, que la certificación fue suscrita por la Subsecretaria de la Junta, y no por el Secretario según disponía la Ley General de Corporaciones vigente al momento de ser emitida.

---

[1] Conforme al procedimiento establecido por el artículo 75 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2278, y por la sección 87.1 del Reglamento Hipotecario, el Registrador de la Propiedad informó a la Fiscal de Distrito de Caguas sobre la alteración a la Minuta de Asiento de Presentación mediante carta del 12 de mayo de 2000. En la misma explicó que, debido a que los Diarios de Operaciones se encuentran accesibles al público en general, es muy difícil establecer quién realizó el cambio y cuándo. Contestación a Recurso Gubernativo, Anejo II.

No conforme con la calificación del Registrador, G.P.R.C. presentó oportunamente un Escrito de Recalificación. En cuanto a la primera falta señalada alegó que el documento a ser calificado era la escritura de arrendamiento como tal y no la Minuta de Asiento de Presentación –cuya naturaleza, adujo, es la de un mero documento administrativo–, por lo que no procedía la notificación de faltas por ese fundamento. En cuanto a las faltas relacionadas con la resolución emitida por la corporación, G.P.R.C. acompañó copia de la certificación del 7 de mayo de 1991, esta vez con los correspondientes sellos adheridos a la primera página de la misma. Además, incluyó una certificación con fecha del 6 de octubre de 1999, suscrita por la Secretaria de G.P.R.C., en la que se sostiene la vigencia de la resolución corporativa de 1991 por no haber sido cancelada o modificada en forma alguna. En esta última certificación se reitera la autoridad del Presidente de G.P.R.C. para comparecer a nombre y en representación de la corporación. Finalmente, en el Escrito de Recalificación G.P.R.C. sostuvo que, si bien el artículo 402 de la Ley General de Corporaciones de 1956 establece que es el Secretario el que debe llevar las actas de todas las juntas de la corporación, nada en esa ley impide que un Subsecretario de una corporación certifique la existencia de una resolución corporativa.[2]

Posteriormente, el Registrador de la Propiedad reiteró su negativa a inscribir mediante Calificación Denegatoria Final. Además de los fundamentos para denegar señalados en la calificación original, añadió como quinta falta que no se había presentado como documento complementario un permiso de uso para local comercial pues, según consta de la propia escritura, la propiedad arrendada sería utilizada para la venta de gasolina. De dicha denegatoria se recurre ante este Foro.

II

En primer lugar consideraremos conjuntamente la validez de las faltas notificadas por el Registrador de la Propiedad relacionadas con la certificación que ante notario realizara la Subsecretaria de la Junta de Directores de G.P.R.C. sobre la resolución corporativa que confirió la capacidad representativa a su Presidente.

Para considerar estas faltas debemos, sin embargo, repasar brevemente algunos de los parámetros de la facultad calificadora que ostenta el Registrador de la Propiedad.

A

Como parte del principio de legalidad inmerso en nuestro ordenamiento registral, los Registradores de la Propiedad tienen la obligación legal de verificar que todo documento presentado ante el Registro sea válido y perfecto. U.S.I. Properties Inc. v. Registrador, 124 D.P.R. 448, 465 (1989); Dershowitz & Co., Inc. v. Registrador, 105 D.P.R. 267 (1976); Ángel Sanz Fernández, Instituciones de Derecho Hipotecario, T. II, pág. 146

---

[2] Aunque la Ley General de Corporaciones de 1956 fue derogada por la Ley Núm. 144 de 10 de agosto de 1995, la certificación concernida fue suscrita bajo

(1953); Luis Rafael Rivera Rivera, <u>Derecho Registral Inmobiliario Puertorriqueño</u>, pág. 268 (2000). Esta función verificadora se limita a determinar si un documento es o no inscribible, mas no comprende el declarar la existencia o inexistencia de un derecho dudoso o contendido entre partes. <u>Preciosas Vistas del Lago</u> v. <u>Registrador</u>, 110 D.P.R. 802, 810 (1981).

Es mediante el mecanismo de la calificación que el Registrador de la Propiedad instrumenta este principio de legalidad y comprueba la legalidad de los títulos presentados al Registro antes de acceder a su inscripción. <u>Western Federal Savings Bank</u> v. <u>Registrador</u>, 139 D.P.R. 328 (1995); <u>Preciosas Vistas del Lago</u> v. <u>Registrador</u>, 110 D.P.R. 802 (1981).

En cuanto a la facultad del Registrador para calificar los documentos notariales, su amplitud es dictada por la ley hipotecaria junto a su reglamento y se extiende a examinar (1) que estos cumplan con las formas extrínsecas dispuestas por la ley; (2) que los otorgantes ostenten la capacidad jurídica para realizar el negocio jurídico pertinente; (3) que los actos dispositivos contenidos en la escritura presentada sean válidos, y (4) que no existan obstáculos que surjan del Registro de la Propiedad que impidan la inscripción del documento. <u>Western Federal Savings Bank</u> v. <u>Registrador</u>, 139 D.P.R. 328, 334 (1995); Artículo 64 Ley Hipotecaria, 30 L.P.R.A. sec. 2267.

Con relación a la calificación de las formas extrínsecas **de los documentos notariales hemos resuelto que** "le corresponde al Registrador determinar si el documento presentado cumple con las formalidades que exige nuestra Ley Notarial, como por ejemplo: la capacidad de los otorgantes, la identidad de los otorgantes o fe del conocimiento, rúbrica, firma, y otros." <u>Ramírez Lebrón</u> v. <u>Registrador</u>, 131 D.P.R. 76, 82-83 (1992) **(énfasis suplido). Véase además,** <u>Western Federal Savings Bank</u> v. <u>Registrador</u>, 139 D.P.R. 328 (1995).

Debe subrayarse, sin embargo, que la autoridad calificadora que ostenta el Registrador no le licencia para requerirle a los presentantes el cumplimiento de formalidades no contempladas por la ley o la jurisprudencia. <u>Mojica Sandoz</u> v. <u>Bayamón Federal Savs</u>., 117 D.P.R. 110, 130-31 (1986). Por otra parte, el <u>Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad</u> impone una significativa limitación a esta facultad calificadora, pues solamente permite considerar como faltas en los documentos presentados aquéllas "que resulten del texto de dichos documentos o puedan conocerse por la simple inspección de ellos." <u>Reglamento Hipotecario</u>, sec. 76.1 (énfasis suplido).

Con la anterior exposición como preámbulo, corresponde determinar si el Registrador de la Propiedad se excedió en sus facultades calificadoras al notificar las mencionadas faltas relativas a la certificación que acreditó la existencia de la

la vigencia de la antigua ley.

resolución corporativa sobre la capacidad de representación del Presidente de G.P.R.C. Veamos.

B

En síntesis, y sin cuestionar la suficiencia de la autorización que G.P.R.C. le confirió a su Presidente mediante resolución, el Registrador impugna (1) la falta del sello corporativo o el del notario en la primera página de dicha certificación; (2) que la certificación fue suscrita por la Subsecretaria y no por el Secretario de la Junta de Directores de la Corporación y; (3) que la misma no es de fecha contemporánea al negocio jurídico expresado en la escritura de arrendamiento.

Nuestro ordenamiento notarial autoriza el que otorgantes comparezcan a un instrumento público en representación de otras personas. Art. 18 Ley Notarial, 4 L.P.R.A. sec. 2036; Regla 28 Reglamento Notarial, 4 L.P.R.A. Ap. XXIV R. 28. Por ello, un notario autorizante tiene la obligación de hacer constar en toda escritura pública la capacidad en que estos comparecen. Es decir, debe expresar si intervienen en nombre propio o en representación de otro. Art. 18 Ley Notarial, supra; Regla 27 Reglamento Notarial, 4 L.P.R.A. Ap. XXIV R. 27.

En virtud de lo anterior, es indispensable que en el otorgamiento de una escritura se acredite ante notario la capacidad representativa de un otorgante que comparece a nombre de una persona jurídica. Rodríguez Vidal v. Benvenutti, 115 D.P.R. 583, 589 (1984).

Desde Sabalier Sabalier v. Iglesias Pantín, 34 D.P.R. 352 (1925), reconocimos que por ser una corporación un organismo artificial e intangible, existente solamente en contemplación a la ley, todos sus actos han de celebrarse en representación suya por vía de agentes. Véase además, William Meade Fletcher, Cyclopedia of the Law of Private Corporations, sec. 437, pág. 315. Es, por tanto, a través de sus oficiales que de ordinario una corporación se obliga, ya sea en virtud de la autoridad que los estatutos corporativos le hayan conferido; por autorización expresa otorgada mediante resolución corporativa; por autorización implícita; por autoridad aparente; o en casos muy limitados, por virtud de cierta facultad inherente a su cargo. Carlos Díaz Olivo, Corporaciones, pág. 93-95 (1999). Fletcher, supra, sec. 438, pág. 353.

En los casos en que la autoridad de un oficial de la corporación ha sido conferida expresamente por una resolución corporativa, como en el presente caso, es necesario que dicha resolución describa adecuadamente las facultades específicamente concedidas y los actos autorizados además de las circunstancias personales que posibiliten la

**identificación adecuada del representante.** Véase, Sarah Torres Peralta, <u>El Derecho Notarial Puertorriqueño</u>, pág. 8.24 (1995).[3]

Es necesario además, cuando el negocio jurídico intente ser inscrito en el Registro de la Propiedad, que un funcionario corporativo de la entidad facultado para ello –regularmente el Secretario– acredite la existencia y validez de la resolución que confiere la autoridad a dicho representante, mediante una certificación. **Esta certificación debe ser presentada ante el Registro como documento complementario y, además,** la firma del Secretario o funcionario corporativo en esa certificación debe estar debidamente autenticada por un notario, esto es, su firma debe estar legitimada. <u>**Pino Development Corp**</u>. v. <u>**Registrador**</u>, 133 D.P.R. 373 (1993); <u>**Royal Bank of Canada**</u> v. <u>**Registrador**</u>, 105 D.P.R. 414 (1976). Véanse además, <u>In re Armando E. González Maldonado</u>, res. el 20 de diciembre de 2000, 2000 TSPR 192, nota al calce 45; Art. 60 Ley Hipotecaria, 30 L.P.R.A. 2263; sec. 72.1, Reglamento Hipotecario; Ángel Sanz Fernández, <u>Instituciones de Derecho Hipotecario</u> (1953), T. II, pág. 316.

**En el caso de autos, como veremos, el notario público Emilio Cancio Bello cumplió con todos los requisitos legales existentes al momento del otorgamiento de la escritura pública número 8 del 18 de abril de 1997 sobre arrendamiento y, específicamente,** al momento de legitimar la firma de la Subsecretaria de la Junta de Directores de G.P.R.C. al ésta acreditar mediante certificación las facultades representativas del Presidente de G.P.R.C. **Por ello, el Registrador de la Propiedad se excedió en sus facultades calificadoras al denegar la inscripción solicitada fundamentándose para ello en las aquí consideradas faltas notificadas, pues no existe requisito alguno en nuestra ley notarial que exija el cumplimiento de las formalidades requeridas.**

**En primer lugar, es incorrecto el señalar como falta la ausencia del sello corporativo o el del notario a la primera página de la certificación suscrita ante notario por la Subsecretaria de la Junta de Directores de la corporación.**

---

[3] La Resolución Corporativa aprobada por G.P.R.C. el 30 de abril de 1991 autoriza al Sr. Rafael Anibal Toro Sánchez para que a nombre y en representación de la Corporación realice, entre otros, los siguientes actos:
    (a) Compre y/o venda propiedades inmuebles ubicadas en Puerto Rico;
    . . .
    (c) Otorgue contratos de arrendamiento, de sub-arrendamiento, de extensión y modificación de arrendamiento y de sub-arrendamiento, así como otorgue la cancelación de los mismos, compareciendo en el carácter de arrendadora, arrendataria, sub-arrendadora, sub-arrendataria, según fuere el caso;
    . . .
    (h) Se autoriza también a Don Rafael Aníbal Toro Sánchez para que lleve a cabo las antes mencionadas transacciones, mediante escritura pública y/o por documentos privados, estipule y acuerde con las demás partes el precio y demás cláusulas y condiciones, según lo estime más conveniente para nuestra corporación. <u>Certificación</u>, 7 de mayo de 1991.

En términos generales, el testimonio de legitimación de firma es una acreditación del hecho de que en determinada fecha la persona que es quien dice ser ha firmado en presencia del notario, sin que éste último asuma responsabilidad alguna por el contenido del documento privado cuya firma legitima. Art. 56 Ley Notarial, 4 L.P.R.A. sec. 2091; Regla 67 Reglamento Notarial, 4 L.P.R.A. Ap. XXIV R. 67. Véase, Rodríguez Vidal v. Benvenutti, supra en la pág. 589.

En particular, la legitimación de la firma ante notario en una certificación de la mencionada índole equivale a un testimonio notarial de que un funcionario corporativo competente estuvo ante un notario, quien le conoce, y que en determinada fecha puso su firma en tal documento. De esta forma, se garantiza la fecha de este documento notarial y se protege la certeza y corrección de la certificación sobre la resolución corporativa acreditativa de capacidad representativa. Torres Peralta, supra, en la pág. 15.11.

Las formalidades que rigen este tipo de documento notarial se encuentran tanto en la Ley Notarial como en su Reglamento. Así, por ejemplo, el Artículo 57 de la Ley Notarial, 4 L.P.R.A. sec. 2092, establece que "[l]as fórmulas a utilizarse en los testimonios serán breves y sencillas, y comprenderán la autenticidad del acto, expresando siempre el notario que conoce personalmente a los firmantes o al testigo de conocimiento, o haciendo constar que ha suplido su conocimiento personal en la forma señalada [por la Ley]". El Artículo 58 establece, además, que "[l]os testimonios llevarán una numeración sucesiva y continua y serán encabezados por el número que les corresponda". 4 L.P.R.A. sec. 2093. Asimismo, según el Artículo 60 de la Ley, 4 L.P.R.A. sec. 2095, será nulo un testimonio que no lleve la firma del notario autorizante.

Por su parte, el Reglamento notarial, al definir el concepto de testimonio, establece que en el testimonio o declaración de autenticidad "el notario expresa, bajo su fe notarial, sello y firma, sobre la veracidad de un hecho ocurrido ante él o que le conste." Regla 65 Reglamento Notarial, 4 L.P.R.A. Ap. XXIV R. 65 (énfasis suplido).

De lo anterior se desprende que no es un requisito exigible por el Registrador de la Propiedad el que se estampe en la primera página de ningún testimonio de legitimación de firma, el sello notarial o el de la corporación.[4] Aunque fijar los mencionados sellos

---

[4] Luego de la notificación original de faltas que emitiera el Registrador el 29 de septiembre de 1999, G.P.R.C. presentó al Registro una copia de la certificación con el sello del notario y de la corporación estampados en su primera página. El sello de la corporación en la primera página de esta nueva copia lee en su centro "Corporate Seal 1992", pero el sello originalmente puesto en la segunda página, junto a la firma de la Subsecretaria de la Junta de Directores, no expresa año alguno. Mediante "Contestación a Recurso Gubernativo", el Registrador objetó a la presentación de este documento aduciendo que el año indicado en el sello es demostrativo de que la corporación fue incorporada en 1992 y que, por tanto, dicha entidad no existía en 1991, año en que se suscribió la controvertida certificación. Tal señalamiento es improcedente.

Aunque el utilizar el sello corporativo es evidencia prima facie de que con determinado acto la corporación se obliga, el uso de dicho sello

en todas las páginas de dichos testimonios es una práctica aconsejable, no es una formalidad requerida por nuestro ordenamiento, por lo que el Registrador no puede negarse a inscribir el documento por este fundamento. Siempre, no obstante, debe fijarse el sello notarial **en el testimonio, requisito que el notario en este caso cumplió a cabalidad cuando lo estampó junto a su firma al dar fe del testimonio.**

Cabe señalar, además, que en cuanto a la escritura pública como tal, el notario público Emilio Cancio Bello la autorizó de conformidad con todos los requisitos legales relativos a la acreditación de la capacidad representativa del Presidente de G.P.R.C.[5]

En segundo término, y por similares fundamentos, carece de méritos la negativa a inscribir la escritura presentada por razón de que la mencionada certificación sobre la validez y existencia de la resolución corporativa estaba suscrita por la Subsecretaria de la Junta de Directores de G.P.R.C. y no por su Secretario o Secretaria.

Apoya su contención el Hon. Registrador de la Propiedad en el artículo 402(a) de la Ley General de Corporaciones vigente al momento de suscribirse la mencionada certificación. Según el mismo es al Secretario a quien le corresponde "llevar las actas

---

**no es indispensable**. Véanse, Fletcher, <u>supra</u>, sec. 2466, págs. 194-95; Carlos Díaz Olivo, <u>Corporaciones</u>, pág. 63 (1999). Tanto la Ley de Corporaciones de 1956 como la ley vigente, **facultan** a las corporaciones a poseer un sello e, inclusive, **alterarlo** a su voluntad. Art. 2.02(c) Ley General de Corporaciones de 1995, 14 L.P.R.A. 2652(c); Art. 202(3) Ley General de Corporaciones de 1956. Esto significa que el sello adoptado por una corporación puede ser rechazado, alterado o remplazado en una fecha posterior a su incorporación. Fletcher, <u>Id.</u>, sec. 2463, págs. 186-87.

[5] Como se ha dicho, son requisitos de fundamental importancia (1) que en el otorgamiento de una escritura el notario haga constar el carácter de los comparecientes en la escritura y (2) que en todo caso se le acredite al notario, con documentos fehacientes, la capacidad representativa de las personas que intervienen en la escritura.

En cuanto a lo primero, el Notario dejó constada en la escritura la capacidad representativa del Presidente G.P.R.C., así como la adecuada identificación de éste y de la corporación según requerido por la Ley Notarial, Art. 15, 4 L.P.R.A. sec. 2033, y el Reglamento Notarial en su Regla 25, 4 L.P.R.A. Ap. XXIV R.25.

En cuanto a la acreditación de dicha capacidad el notario, aunque no mencionó en la escritura específicamente la Resolución de G.P.R.C. sobre las facultades representativas de su Presidente, cumplió a cabalidad con sus obligaciones legales pues ello no era necesario al momento del otorgamiento de la escritura a la luz de la reglamentación entonces vigente.

Actualmente, la Regla 28 del Reglamento Notarial, según enmendada, ordena que en toda escritura se haga referencia a los documentos acreditativos de capacidad representativa. Además, dicha regla hoy permite que el notario copie en la escritura, a su discreción, el texto de dicho documento acreditativo. <u>In re Enmienda al Reglamento Notarial para Enmendar la Regla 28</u>, res. el 23 de febrero de 2000, 2000 TSPR 30. Véase, <u>In re Armando E. González Maldonado</u>, res. el 20 de diciembre de 2000, 2000 TSPR 192. No obstante, al momento del otorgamiento de la escritura de arrendamiento ante nos, el 18 de abril de 1997, el notario no estaba obligado a relacionar en la escritura el documento acreditativo de la capacidad del representante salvo que fuese requerido por uno de los otorgantes en cuyo caso tenía que hacer tal referencia. <u>In re Enmienda al Reglamento Notarial para Enmendar</u>

de todas las juntas de la corporación y sus directores". Art. 402(a) Ley General de Corporaciones de 1956.

**No obstante,** nada en dicha Ley impide que sea el Subsecretario, en lugar del Secretario, el que emita los documentos necesarios a nombre de la corporación. **En este sentido, y así es firmemente sostenido por la doctrina en el derecho corporativo, cualquier persona designada por la estructura organizativa de una corporación para actuar en ausencia del Secretario puede realizar cualquier actividad para la cual este funcionario haya estado autorizado. Fletcher,** <u>supra</u>**, sec. 636, pág. 219;** <u>Arnold v. La Belle Oil Co.</u>**, 47 Cal. App. 290, pág. 297, 190 P. 815, pág. 818 (1920).**

**Debe recordarse que con el testimonio de legitimación de firma se "acredita el hecho de que en determinada fecha una firma ha sido puesta en presencia del Notario** por quien evidentemente es quien dice ser". **4 L.P.R.A. Ap. XXIV R. 67 (énfasis suplido).** De esta forma, en una certificación de este tipo, con su dación de fe el Notario constata el hecho de que un funcionario corporativo competente **estuvo ante él y que en determinada fecha puso su firma. Esto es, el Notario en este caso en particular dio fe de las capacidades que ostentaba la Sra. Margaret King como Subsecretaria de la Junta de Directores de G.P.R.C. al legitimar su firma. Es el cumplimiento con el requisito de legitimación de firma lo que viene obligado el Registrador a calificar, no más. Después de todo, el Registrador debe tomar en consideración que el Notario ejerce una función de primer calificador sobre la legalidad y suficiencia de los documentos presentados al Registro. Véase,** <u>Federación de Pescadores v. U.S. Industries</u>**, 135 D.P.R. 303 (1994);** <u>Rosado Collazo v. Registrador</u>**, 118 D.P.R. 577 (1987);** <u>Mojica Sandoz v. Bayamón Federal</u>**,** <u>supra</u>**. Véase, por ejemplo,** <u>Western Fed. Savs. v. Registrador</u>**,** <u>supra</u> **(al calificar la copia certificada que el notario expide de una escritura pública, el Registrador únicamente vela por que el notario haya dado fe de la existencia de las firmas de las partes, pues la ley no exige que las firmas existan en dicha copia).**

**Ausente, por lo tanto, defecto legal alguno que incida sobre la capacidad de la Subsecretaria de la Junta de Directores de G.P.R.C. al suscribir la certificación en cuestión, el Registrador de la Propiedad se extralimitó en sus facultades calificativas al requerir el cumplimiento de un requisito inexistente en la ley,** <u>i.e.</u>**, la firma por la Secretaria de la Corporación, no la Subsecretaria, en esta certificación.**[6]

**Finalmente, y en cuanto a la validez de la referida certificación, el Registrador de la Propiedad señaló como impedimento a la inscripción solicitada, y sin explicar**

---

la Regla 28, 142 D.P.R. 801 (1997) (25 de marzo de 1997); <u>In re Armando E. González Maldonado</u>, <u>supra</u>.

[6] Nótese, además, que en <u>Pino Development Corp. v. Registrador</u>, <u>supra</u>, resuelto bajo la anterior Ley General de Corporaciones, sostuvimos la validez de un certificado de resolución corporativa suscrito por el **Secretario Auxiliar** de dicha entidad. <u>Id</u>., pág. 384.

razones para ello, que la certificación **no es de** fecha contemporánea **al negocio jurídico expresado en la escritura de arrendamiento.**

**En este caso, la resolución corporativa que le confirió las facultades representativas al Presidente de G.P.R.C. fue aprobada por su Junta de Directores mediante reunión del** 30 de abril de 1991. **Por otra parte, bajo la firma legitimada de la Subsecretaria, se certificó la existencia de dicha resolución mediante Certificación del** 7 de mayo de 1991. **En dicha certificación, y luego de transcribir la resolución según aprobada por la Junta de Directores, expresó la Subsecretaria de la Corporación que la misma "se encuentra en todo su efecto y vigor, por no haber sido cancelada y/o modificada en forma alguna."** <u>Certificación</u>, 7 de mayo de 1991, pág. 1.

**Fue al amparo de las facultades otorgadas por esta resolución corporativa, que el Presidente de G.P.R.C. otorgó la escritura de arrendamiento en cuestión, el** 18 de abril de 1997.

**Por tratarse de una autorización conferida para que una persona natural (el Presidente) actúe en nombre de otra jurídica, la relación creada entre un oficial que actúa bajo estas circunstancias es, para estos efectos, la de un mandato representativo directo.**[7] **El Registrador en estos casos "viene obligado a calificar tanto la legalidad de la escritura [presentada,]** como la capacidad del mandatario presidente de la corporación", **<u>Banco de San Juan v. Registrador</u>, 103 D.P.R. 417, 422 (1975) (énfasis suplido).**

**Al evaluar la capacidad del mandatario, el Registrador de la Propiedad debe tomar en cuenta, entre otras cosas, si han surgido las causas que nuestro Código Civil estatuye para la terminación de esta relación. Por tanto, debe considerar muy especialmente lo establecido por el artículo 1624 del Código Civil, 31 L.P.R.A. sec. 4481, según el cual el mandato se termina por (1) su revocación; (2) la renuncia del mandatario y; (3) por la muerte, quiebra o insolvencia del mandante o del mandatario.**[8]

**No habiendo acaecido ninguna de las causas legales que motivan la extinción de la autorización brindada por la Corporación en la resolución corporativa del 30 de abril de 1991 al Sr. Rafael Aníbal Toro Sánchez para efectuar —mediante la escritura pública número ocho (8) del 18 de abril de 1997— el negocio jurídico presentado, resolvemos que**

---

[7] El contrato de mandato se encuentra reglamentado por los artículos 1600 al 1630 del Código Civil, 31 L.P.R.A. sec. 4421-88. En el mandato representativo directo, "el mandatario está facultado a representar al mandante. Es decir, el tercero conoce que el mandatario actúa por cuenta y a nombre del mandante-poderdante, convirtiéndose el mandatario, además, en apoderado" <u>Zarelli v. Registrador</u>, 124 D.P.R. 543, 552 (1989). Véanse además, <u>Gorbea v. Registrador</u>, 133 D.P.R. 308 (1993); <u>Kogan v. Registrador</u>, 125 D.P.R. 636 (1990).

[8] Antes de la Ley Núm. 17 de enero 10 de 1998 el Código Civil mencionaba como causa de terminación del mandato, además de las antedichas, la interdicción.

actuó indebidamente el Registrador de la Propiedad al denegar la inscripción solicitada por el fundamento de falta de contemporaneidad entre la certificación sobre resolución corporativa del 7 de mayo de 1991 y la escritura de arrendamiento del 18 de abril de 1997.

Resaltamos, en particular, que dicha autorización no tenía, ni tiene, vigencia temporal limitada. Tampoco ha sido afectada por resolución corporativa posterior que restrinja las facultades del Presidente de G.P.R.C. No era necesario, por tanto, que la referida resolución corporativa fuese de fecha contemporánea al otorgamiento de la escritura pues estaba en plena vigencia según fue certificado por la Subsecretaria de la Junta de Directores ante notario y según fue constatado por el notario al acreditársele la capacidad representativa de las partes cuando autorizó la escritura aquí presentada.

Cabe señalar, además, que ante la notificación que el Registrador hizo de esta falta, la Secretaria de la Junta de Directores de la corporación, el 6 de octubre de 1999 suscribió ante notario —y presentó ante el Registrador como documento complementario— una Certificación acreditando que la referida resolución corporativa del 30 de abril de 1991 no había sido revocada y se encontraba en pleno vigor. Esto, sin más, debió haber sido suficiente para que el Registrador diera por corregida esta alegada falta.

Considerada la procedencia de los defectos notificados por el Registrador sobre la referida certificación, pasamos entonces a examinar los restantes señalamientos.

### III

Como se ha dicho, al presentarse la escritura para su inscripción en el Registro, en la Minuta de Asiento de Presentación se consignó equivocadamente el número de la finca matriz de la cual se segregó la finca objeto de la escritura de arrendamiento. En vista de ello, el Registrador de la Propiedad notificó este incidente como un defecto e informó que debía presentarse nuevamente la referida escritura de arrendamiento con una nueva Minuta cuyo número de finca estuviese correcto y sin tachaduras. El problema, por tanto, se circunscribe a determinar si es posible corregir la consignación inadecuada del número de finca en la Minuta de Asiento de Presentación al presentarse una escritura ante el Registro de la Propiedad, o si es necesario que esta escritura sea presentada nuevamente.

Antes de ello, sin embargo, veamos brevemente en qué consiste este mecanismo registral y los principios hipotecarios que envuelve.

### A

El documento conocido como Minuta de Asiento de Presentación está íntimamente ligado al principio registral de prioridad o rango. Por virtud de este fundamental

---

La mencionada Ley, actualizó nuestro ordenamiento suprimiendo la referencia a la interdicción.

principio, los actos registrables que primero ingresen al Registro de la propiedad gozarán de una preferencia (ya sea excluyente o prelativa) sobre cualquier otro acto presentado con posterioridad, aunque el último acto presentado fuese de fecha anterior (prior tempore potior iure). II Ramón María Roca Sastre, Derecho Hipotecario: Fundamentos de la Publicidad Registral, pág. 1 (Ed. 1995). En este sentido, el elemento temporal es esencial pues el rango otorgado a los derechos será concedido a partir de una determinada cronología de eventos.

Así, según el artículo 53 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2256, "[l]os títulos inscritos surtirán efecto en cuanto a terceros desde la fecha de su inscripción." También la Ley establece que "[s]e considerará como fecha de inscripción para todos los efectos que ésta deba producir,  . . . la fecha de presentación que deberá constar en la inscripción misma." Id.

De esta forma, si bien los títulos inscritos surten efectos en cuanto a terceros desde su inscripción, será la fecha de la presentación el momento determinante para que esta inscripción sea efectiva, pues la inscripción en el Registro produce sus efectos retroactivamente desde el momento específico de la presentación. II Roca Sastre, supra, pág. 5; Luis R. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, pág. 188 (2000). Ponce Federal v. Registrador, 105 D.P.R. 486 (1976).

Ahora bien, la constancia escrita del turno o rango logrado con la presentación de un documento queda preservada en el Registro por el asiento de presentación. Se trata, en esencia, de un asiento preliminar y temporero que debe ser expedido según el orden en que se vayan presentando los títulos en el Registro. Su objeto es hacer constar de forma precisa el momento o instante exacto de la presentación de tal forma que se le garantice al presentante su turno según el orden de llegada. II Roca Sastre, supra, pág. 220; XV Vázquez Bote, Derecho Privado Puertorriqueño: Derecho Inmobiliario Registral (II), sec. 19.4, pág. 494 (1992). Véase, Flores v. Arroyo, 43 D.P.R. 282, 283 (1932) ("El asiento de presentación es un aviso implícito a todo el mundo hasta que el documento sea realmente inscrito. Una escritura, una vez presentada, si merece inscribirse, tiene todos los efectos de tal inscripción.")

En la práctica, el Registro de la Propiedad lleva un sistema de ordenamiento diario donde se hace constar la presentación de los documentos por orden cronológico. Ley Hipotecaria art. 34, 30 L.P.R.A. 2154. Este sistema es instrumentado en Puerto Rico con el mecanismo de las Minutas de Asiento de Presentación. Véase, Secciones 31.1-31.11 Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad.

Conforme a este sistema, todo documento que se interese presentar deberá tener adherida una de estas Minutas, siendo responsabilidad del presentante acompañar a los documentos interesados un original y una copia de esta hoja. El original de la Minuta constituirá el asiento de presentación y la copia constituirá el recibo que se le entregará

al presentante. **Reglamento General, secs. 31.4, 31.6, 31.8. Los originales de las minutas entonces se compilan en carpetas que, a su vez, constituyen el Diario de Operaciones. Reglamento General, sec. 31.9.** El Diario de Operaciones es uno de los libros oficiales que dan fe de las constancias del Registro, pues se encuentra disponible al público y contiene los asientos de presentación extendidos al presentarse las Minutas de Presentación.[9] Esto es, el Diario de Operaciones –a través de las minutas de presentación que contiene– guarda el turno de los títulos presentados y da fe pública sobre ello. **Reglamento General, secs. 29.1, 31.9.**

**Toda vez que el asiento de presentación constata la información necesaria para dar aviso al público de los títulos presentados que afectan a determinada propiedad y de sus respectivos rangos, un error en el número de la finca en el original de la minuta de asiento de presentación puede desencajar la correcta publicidad que deben garantizar los asientos en el Registro. Por ello, en cada minuta debe consignarse de forma precisa la información necesaria para cumplir la razón de ser del asiento de presentación en cuanto a la adecuada identificación del título presentado y la constatación del hecho de su ingreso en el Registro.[10]**

**Así pues, como el número de la finca en la minuta de asiento de presentación identifica cuál es la propiedad afectada por un negocio jurídico,** la expresión equivocada de tal número equivale a la ausencia de un aviso adecuado sobre el hecho de que, en la realidad extrarregistral, se ha transmitido un título que le grava, **propiciándose así, la indeseable anomalía de una inexactitud registral.**

**En el presente caso, al indicarse erróneamente el número de la finca en la minuta, la publicidad que el asiento de presentación manifestó versó sobre la finca equivocada. Por ende, la errada presencia de un asiento de presentación sobre la finca 2,264 significó una publicación de ausencia de gravamen sobre la finca 30,049. Ante tal situación, entendemos que actuó correctamente el Registrador de la Propiedad al no realizar la inscripción solicitada basándose para ello en esta imprecisión no detectada previamente en la minuta. Entendemos, no obstante, que en lugar de solicitar una nueva presentación del documento debió seguir los mecanismos provistos estatutaria y reglamentariamente para la rectificación del asiento. Veamos.**

**B**

---

[9] "Los tomos oficiales que se llevarán en el Registro de la Propiedad y **que harán fe de su contenido** serán . . . y el **Diario de Operaciones.**" Reglamento General, sec. 29.1.

[10] Entre otras cosas, la Minuta de Asiento de Presentación debe contener 1) número de asiento y diario; 2) fecha y hora de la presentación; 3) identificación del documento; 4) derechos cuya inscripción, cancelación o anotación se solicita; **5) relación de las fincas sobre las cuales se interesa las operaciones registrales y ubicación de éstas**; 6) a favor de quién se solicita la inscripción; y 7) relación de documentos complementarios que se acompañan. Reglamento General, sec. 31.10.

Como norma general, es obligatorio para el Registrador de la Propiedad expedir el asiento de presentación a todo presentante, pues la propia Ley Hipotecaria establece que "[e]l Registrador tomará razón en el libro Diario de todo título que se presente en el Registro para su inscripción o anotación, aunque entienda que el título a presentarse carece de algún requisito legal." Ley Hipotecaria art. 50, 30 L.P.R.A. sec. 2253 (énfasis suplido). Sin dudas, con este artículo se quiso pautar claramente que todo presentante tiene la facultad de exigir que se reciban en el Registro los documentos presentados y que se expida el asiento de presentación para guardar su turno correspondiente, independientemente de que no se cumplan todos los requisitos necesarios. Claro está, la supervivencia del rango obtenido estará sujeta al posterior proceso de calificación y subsanación de faltas notificadas.

A pesar de este deber del Registrador de extender el asiento de presentación, el Reglamento Hipotecario incorpora una excepción a esta obligación atinente al tema ante nos. La sección 31.6(a) del Reglamento General establece que

> "[s]erá responsabilidad del presentante complementar correctamente dicha minuta [de asiento de presentación], la cual no podrá contener borrones, raspaduras ni tachaduras. El empleado verificará la corrección de la misma a la luz del documento ante su consideración. De hallarla conforme, se firmará por el presentante y el empleado del Registro antes de proceder a la próxima etapa del proceso de presentación.
> Si la minuta de asiento de presentación no está correctamente complementada, no podrá procederse con la presentación del documento que la motiva. El proceso de presentación de documentos no podrá detenerse debido a que los presentantes necesiten tiempo para corregir o añadir información omitida en la minuta de asiento de presentación." (énfasis suplido) Reglamento General, sec. 31.6(a).

Con esta sección, y de conformidad con la autoridad que el Art. 36 de la Ley Hipotecaria le brinda al Secretario de Justicia para reglamentar y requerir estas minutas, se incorporó a nuestro ordenamiento registral una situación en la que el Registrador puede negarse a extender el asiento de presentación no recibiendo el documento que se intenta presentar.[11]

Ahora bien, en el presente caso no se activó esta disposición reglamentaria. De ordinario, si el funcionario encargado de recibir los documentos presentados al Registro se encuentra con una situación de esta índole, debe proceder a devolver la minuta a su presentante para que prepare una nueva y la inscriba según el turno que le toque en el Registro. Sin embargo, en este caso el defecto en la minuta de presentación no fue identificado en el proceso de presentación pues pasó por desapercibido y se extendió un asiento de presentación sobre la finca cuyo número aparecía en la minuta. En efecto,

---

[11] Asimismo ocurre en otras instancias. Por ejemplo, procede no extenderse el asiento de presentación cuando no se incluyen los aranceles completos (30 L.P.R.A. sec. 1767d); cuando la denegatoria es consentida, no se corrigen las faltas y el documento es presentado nuevamente (Ley Hipotecaria art. 79, 30 L.P.R.A. sec. 2282) y; cuando la denegatoria es confirmada por el Tribunal Supremo, no se corrigen las faltas y el documento es presentado

al incorporarse posteriormente la Minuta de Asiento de Presentación en el Diario de Operaciones, los libros del Registro reflejaban la presentación de una escritura de arrendamiento sobre la finca 2,264 y no sobre la finca número 30,049. No fue hasta después de presentado el documento que el Registrador se percató de la equivocación en la minuta al ver la corrección y tachadura de un sujeto anónimo.

Ciertamente, de conformidad con la ya citada sección 31.6(a) del Reglamento Hipotecario, es responsabilidad del presentante complementar correctamente la referida minuta. No obstante, el empleado del Registro tiene también la responsabilidad de "verifica[r] la corrección de la misma a la luz del documento ante su consideración". Reglamento General, sec. 31.6(a). En este sentido, la responsabilidad es compartida y ambos, en este caso, contribuyeron a lo sucedido. Uno, por no llenar adecuadamente la Minuta y el otro, por no verificarla con detenimiento a la luz de la escritura de arrendamiento.

En todo caso, no obstante, la falta de circunspección del funcionario del Registro de la Propiedad al no detectar la equivocación en la minuta contribuyó a provocar una situación de error en el Registro, escenario que se encuentra regulado por las disposiciones que atienden la rectificación de errores cometidos por el Registrador en los asientos del Registro. Véanse artículos 150-154 de la Ley Hipotecaria, 30 L.P.R.A. secs. 2501-05, y secciones 141.1-144.1 del Reglamento Hipotecario. Véase además, Rivera Rivera, supra, págs. 318-23.

Resulta pertinente aclarar en este punto que, al resolver bajo este ordenamiento estatutario y reglamentario, no podemos perder de perspectiva la realidad que los asientos del Registro anunciaron sobre la situación de las fincas en cuestión y el efecto que ello haya podido tener sobre la confianza depositada en las constancias del Registro por terceros que hayan legítimamente adquirido derechos sobre estas fincas. Así, ha sostenido un comentarista que

> [e]n todos los supuestos de error ha de tenerse en cuenta, que el asiento, tal como esté redactado, produce sus efectos normales en cuanto a todo su contenido hasta tanto que se rectifique por los medios legales, sin que así baste para privarlo de uno u otro de aquellos efectos la sola alegación de que es erróneo. Buenaventura Camy Sánchez-Cañete, Comentarios a la Legislación Hipotecaria, Vol. V, pág. 683 (3ra Ed. 1983) (énfasis suplido).

En cuanto a esto último, tomamos conocimiento del hecho que nos consigna el Registrador de la Propiedad con relación a que, luego de la presentación de la Minuta de Asiento de Presentación en cuestión, se presentaron títulos sobre la finca 30,049 (finca sobre la cual versa la escritura de arrendamiento presentada). Concretamente, indican los documentos presentados por el Registrador que, con posterioridad al 5 de mayo de 1997 (fecha en que se presentó la escritura de arrendamiento) y, a la fecha de

---

nuevamente por el mismo interesado u otra persona (Ley Hipotecaria art. 79, 30 L.P.R.A. sec. 2282). Rivera Rivera, supra, pág. 260.

instarse este Recurso Gubernativo, varias escrituras habían sido presentadas que gravan la finca número 30,049.[12]

La Ley Hipotecaria de 1893, Ley anterior a la vigente, estatuía las circunstancias y procedimientos a seguirse para la rectificación de un asiento en el Registro dependiendo de si el error cometido era uno de los denominados materiales o si era un error de concepto. Véase, Artículos 254-64, Ley Hipotecaria de 1893.

Sin embargo, al aprobar la Ley Hipotecaria de 1979, la Asamblea Legislativa optó por prescindir de esta distinción entre tipos de errores para su corrección y enfatizó más bien en la disponibilidad ante el Registrador del título presentado para inscripción.[13] De esta forma, la Ley Hipotecaria actual permite corregir errores en el Registro siempre que se tenga a la vista el documento que motivó la acción, y siempre que con la corrección no se afecten los derechos de titulares inscritos. Pino Development v. Registrador, supra, pág. 380.

En lo que nos compete, el artículo 150 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2501, establece que:

---

[12] Entre éstas, se encuentran en espera de inscripción las siguientes escrituras: 1- Escritura número cuatro (4) otorgada el 10 de febrero de 1999 ante el Notario Orlando R. González, Asiento 186, Diario 859; 2- la Escritura número diez (10) otorgada el 17 de febrero de 1999 ante el Notario Orlando R. González, Asiento 95, Diario 861; 3- Escritura número tres (3) otorgada el 6 de febrero de 1999 ante el Notario Orlando R. González, Asiento 187, Diario 859; 4- Escritura número cinco (5) otorgada el 10 de febrero de 1999 ante el Notario Orlando R. González, Asiento 188, Diario 859; 5- Escritura número seis (6) otorgada el 3 de febrero de 1998 ante el Notario Rafael Fernández Britto, Asiento 138, Diario 819. Véanse Notificación, 28 de septiembre de 1999, pág 2; Certificación del Registrador de la Propiedad, 24 de agosto de 1999 (Contestación a Recurso Gubernativo, Anejo III).

[13] Véase Informe de la Comisión de lo Jurídico del Senado sobre el P. del S. 792, 18 de mayo de 1979:

Se recomienda que se acepte la práctica ya establecida de corregir los errores cometidos siempre que se tenga a la vista el título que motivó la inscripción, no importa de qué naturaleza sea el error, siempre que no se perjudiquen o lo consientan los titulares posteriores.

Véase además Informe de la Comisión de lo Jurídico del la Cámara de Representantes sobre el P. del S. 792, junio de 1979:

En la ley vigente se establecía una clasificación en errores de concepto y errores materiales para la rectificación de los errores en los asientos efectuados por el Registrador. A la luz del desarrollo en este campo esta clasificación no está justificada. Por lo problemático de clasificar y las dificultades que trae se adoptan en nuestro proyecto los Artículos 150 y 151, en los cuales se prescinde de toda clasificación y se le da relevancia al hecho de si el documento está aun [sic] a la vista del Registrador o no.

**Cuando los errores se hayan cometido en** asientos de presentación **o notas que no se practiquen directa y específicamente en virtud de un título, y en indicaciones de referencia,** podrán corregirse aunque no se tenga a la vista el título que motivó la inscripción, siempre que la inscripción principal respectiva baste para dar a conocer el error y sea posible rectificarlo por ella. **(énfasis suplido)**

**Así mismo, el Reglamento Hipotecario establece en su sección 141.3 que:**

**Los Registradores podrán rectificar** por sí, **bajo su responsabilidad, los errores cometidos:**
. . .

**Segundo:** En los asientos de presentación, **notas marginales que no se practiquen directa y específicamente en virtud de un título, y en indicaciones de referencia,** aunque los títulos no obren en la oficina del Registro, siempre que la inscripción principal respectiva baste para dar a conocer el error y sea posible rectificarlo por ella.

**Surge de las mencionadas disposiciones que, de ordinario, un error en el** asiento de presentación **(y por ende en las Minutas de Asiento de Presentación),** puede ser corregido por el propio Registrador, <u>motu proprio</u>, **independientemente que los títulos presentados que motivaron el asiento obren o no en la oficina del Registro y, en caso que éstos no estén a la vista, podrá corregirlos el Registrador cuando de la inscripción principal surge el error y la información necesaria para rectificarlo. En ningún caso, sin embargo, puede el Registrador corregir el error mediante tachaduras, sino que es necesaria la preparación de un asiento nuevo. Sec. 141.1, Reglamento Hipotecario.**

**Sin embargo, establece la Ley que esta facultad de corregir por sí el asiento de presentación** no es aplicable cuando tal corrección puede afectar los derechos de titulares inscritos, situación que se produce en este caso. **A estos efectos, el segundo párrafo del artículo 151 de la Ley establece que:**

Cuando la rectificación pudiera afectar derechos de titulares inscritos se exigirá para corregir el consentimiento de éstos o una resolución judicial ordenando la corrección del asiento. **Artículo 151 Ley Hipotecaria, 30 L.P.R.A. sec. 2502 (énfasis suplido). Véanse además, secs. 141.5, 142.1 del reglamento Hipotecario.**

**De esta forma, antes de proceder con cualquier rectificación de las constancias en el Registro, tiene que haber sido auscultado el consentimiento de estos titulares cuyos derechos pudieran verse afectados por la rectificación y, en defecto de este consentimiento, "deberá el Registrador o la parte que solicita la corrección obtener resolución judicial a tal efecto" para ordenar la corrección del asiento. sec. 141.5 Reglamento Hipotecario.**[14]

**Ahora bien, establece la Ley Hipotecaria que la rectificación de un error surtirá efecto desde la fecha en que dicha rectificación tuviera lugar, Artículo 154, Ley Hipotecaria, 30 L.P.R.A. sec. 2505, disponiéndose, por su puesto, que dicho cambio no**

---

[14] En cuanto a la manera en que este consentimiento de los titulares posteriores debe ser presentado, el Reglamento especifica que éste debe presentarse ante el Registrador mediante instancia firmada y autenticada ante notario. Sec. 142.1, Reglamento Hipotecario.

afectará a aquellos terceros que estén cobijados por la fe pública registral. Véase, Artículo 110, Ley Hipotecaria, 30 L.P.R.A. sec. 2360 ("En ningún caso la rectificación del Registro perjudicará los derechos legítimamente adquiridos por tercero que reúna las condiciones fijadas en esta ley").

Es decir, según la Ley, de ordinario la efectividad de las rectificaciones de errores en los asientos del Registro bajo este articulado, ha de tener vigencia desde su realización. No obstante, aclaramos que de obtenerse el consentimiento de todos los titulares afectados por la corrección –incluyendo a los titulares posteriores que confiaron en la situación que publicaba el Registro–, la rectificación podrá tener efectividad retroactiva contada a partir del momento en que fue presentada la escritura para su inscripción. De otro modo, no tendría sentido alguno solicitar la anuencia de dichos titulares pues, si aún con su consentimiento la rectificación fuese siempre prospectiva, sus derechos no se verían afectados de ninguna manera y tal consentimiento carecería de todo sentido.

Surge de todo lo anterior, pues, que correspondía al Registrador de la Propiedad notificarle al presentante que procurara la anuencia de aquellos titulares inscritos cuyos derechos pueden verse afectados por la corrección de la minuta de presentación para entonces rectificar la referida minuta. En defecto de ello, debió solicitarle al Tribunal de Primera Instancia, o notificarle al presentante que así lo hiciere, que ordenase tal corrección si la misma procedía. Véase, Sección 141.1 *et seq.* del Reglamento Hipotecario.

Recalcamos que no era una opción para el Registrador de la Propiedad llanamente obviar el error en la Minuta e inscribir el título presentado, dándole así validez a la tachadura cuya fecha de realización se desconoce. Sencillamente, la central importancia de la Minuta de Asiento de Presentación en el ordenamiento registral en cuanto la garantía que ésta ofrece sobre la corrección en la publicidad de la fecha y demás circunstancias de los títulos presentados, descarta tal alternativa. Además, el Reglamento Hipotecario establece que los errores cometidos por el Registrador "no se corregirán mediante tachaduras, entrerrenglonaduras o raspaduras, sino mediante la redacción de un asiento nuevo en la forma dispuesta en el Título IX de la Ley.". Sec. 141.1, Reglamento Hipotecario. Por ello, en cuanto a negarse a inscribir la escritura, actuó correctamente el Registrador. Sin embargo, no debió el Registrador notificar esta falta para requerir una nueva presentación de la escritura pública pues era otra la vía legal que tenía disponible.

IV

Por último, en su calificación denegatoria final, el Registrador notificó como falta adicional el no haberse presentado como documento complementario un permiso de

uso para local comercial requerido por el Artículo 16 de la Ley de la Administración de Reglamentos y Permisos (ARPE), Ley Núm. 76 de 24 de junio de 1975, 23 L.P.R.A. sec. 71(o). Se fundamentó para ello en lo resuelto por este Foro en Janer Vilá v. Registrador, 115 D.P.R. 79 (1984).

Conforme a lo resuelto en Janer Vilá v. Registrador, supra, un Registrador puede negarse a inscribir una escritura de arrendamiento de un local, por no haberse presentado el correspondiente permiso de uso como documento complementario. Por lo tanto, siendo un requisito acompañar a la escritura de arrendamiento dicho documento, actuó correctamente el Registrador de la Propiedad al así exigirlo correspondiendo, pues, a G.P.R.C. presentarlo.

V

Por todos los anteriores fundamentos se revoca la nota recurrida en cuanto a las notificaciones de defectos relacionadas con la certificación acreditativa de capacidad representativa del Presidente de G.P.R.C. y en cuanto a no haber procedido el Registrador según el procedimiento de rectificación de asientos para corregir el número de la finca en la Minuta de Asiento de Presentación presentada junto a la escritura de arrendamiento.

Ahora bien, el revocar la calificación negativa del Registrador no implica que el documento en cuestión advenga inscribible sino que procede que dicho funcionario actué conforme lo resuelto por esta Curia. Así, al proceder a rectificar el error en el asiento de presentación, éste deberá notificarle al presentante que procure la anuencia de aquellos titulares inscritos cuyos derechos pueden verse afectados por la corrección de la minuta de presentación para entonces rectificar la referida minuta. En defecto de ello, deberá solicitarle al Tribunal de Primera Instancia, o notificarle al presentante que así lo hiciere, que ordene tal corrección si la misma procede. Véase, artículo 151 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2502, y las secciones 141.5 y 142.1 del Reglamento Hipotecario.

Se confirma, no obstante, la exigencia del Registrador de presentar el debido permiso de uso de ARPE.

Se dictará la Sentencia correspondiente.


Federico Hernández Denton
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Gasolinas de Puerto Rico
Corporation

   Recurrente

   v.                              RG-2000-2

Richard F. Keeler Vázquez,
Registrador de la Propiedad
de Caguas

   **Recurrido**

SENTENCIA

San Juan, Puerto Rico, a 15 de noviembre de 2001.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la nota recurrida en cuanto a las notificaciones de defectos relacionadas con la certificación acreditativa de capacidad representativa del Presidente de Gasolinas de Puerto Rico Corporation y en cuanto a no haber procedido el Registrador de la Propiedad de Caguas según el procedimiento de rectificación de asientos para corregir el número de la finca en la Minuta de Asiento de Presentación presentada junto a la escritura de arrendamiento. Se confirma, no obstante, la exigencia del Registrador de presentar el debido permiso de uso de la Administración de Reglamentos y Permisos.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre sin Opinión escrita. El Juez Asociado señor Rebollo López no interviene.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo