# United States Court of Appeals
## For the First Circuit

No. 06-9002

IN RE: THE GROUND ROUND, INC.,

Debtor.

———————

JOSEPH A. ABBOUD, ELIAS N. DOW, WAZEN J. WYZEW,
a Pennsylvania Partnership, and BYBLOS, INC.,

Appellees,

v.

THE GROUND ROUND, INC.,

Appellant.

———————

APPEAL FROM THE BANKRUPTCY APPELLATE PANEL

FOR THE FIRST CIRCUIT

———————

Before

Boudin, Chief Judge,

Campbell, Senior Circuit Judge,

and Lipez, Circuit Judge.

———————

Harold B. Murphy with whom Andrew G. Lizotte, Christian J. Urbano and Hannify & King, P.C. were on brief for appellant. Eugene J. Malady for appellees.

———————

March 30, 2007

———————

**BOUDIN**, <u>Chief Judge</u>.  In 1977, Joseph Abboud and several partners (collectively, "the partnership") leased real property in West Chester, Pennsylvania, to the Howard Johnson Company for use as a restaurant.  The lease was for 10 years, with options to the lessee to extend for six periods of five years each.  The Ground Round, Inc. ("Ground Round") later succeeded Howard Johnson as the lessee of the premises.

In 1978, a Pennsylvania liquor license for use at the same premises was obtained in the name of one of the lessor partners (a corporation), and title to the license was in turn transferred to Ground Round.  This was contemplated by an addendum to the initial lease which pertinently provided:

> Lessor shall transfer to Lessee in consideration of this Lease and One ($1) Dollar, the liquor license of Lessor at the demised premises, which is a full-service restaurant license with Sunday Sales Permit . . . .  At the termination of the Lease, Lessee shall, in consideration of this Lease and One ($1) Dollar transfer such liquor license to Lessor free of all claims or violations . . . .

In early 2004, while operating under the extended lease, Ground Round filed for bankruptcy under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 <u>et seq.</u> (2000), and ceased to operate its restaurant at the leased premises.  Thereafter, Ground Round as debtor in possession rejected the lease, as a debtor may do with an executory contract, <u>id.</u> § 365, claiming as well the right to retain the liquor license.

-2-

The partnership then began an adversary proceeding against the debtor, seeking specific performance of the lease provision (quoted above) requiring return of the license at the end of the lease. The bankruptcy judge granted this relief and the Bankruptcy Appellate Panel affirmed. In re The Ground Round, Inc., 326 B.R. 23 (Bankr. D. Mass. 2005), aff'd, 335 B.R. 253 (B.A.P. 1st Cir. 2005). Ground Round now appeals to this court. The issues are questions of law which we review de novo. In re DN Assocs., 3 F.3d 512, 515 (1st Cir. 1993).

Under the Bankruptcy Code the debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The section is construed broadly, United States v. Whiting Pools, Inc., 462 U.S. 198, 204-05 & n.9 (1983), and the meaning of the quoted phrase is a matter of federal law; but the existence and extent of the debtor's interest is ordinarily a creature of state law. Butner v. United States, 440 U.S. 48, 54-55 (1979); see also 1 Queenan et al., Chapter 11 Theory and Practice § 9.07 (1994).

At the threshold, the partnership claims that the liquor license was not an interest of the debtor in property so that the license cannot belong to the estate. The partnership argues that when the lease was executed, the Pennsylvania Liquor Code made clear that a liquor license was considered "a personal privilege" and not "property." 47 Pa. Stat. Ann. § 4-468(b.1) (1977); see

-3-

also <u>1412 Spruce, Inc.</u> v. <u>Pa. Liquor Control Bd.</u>, 474 A.2d 280, 283 (Pa. 1984). The state code was amended in 1987--after the effective date of the lease--to make a liquor license property as between the licensee and third parties. 47 Pa. Stat. Ann. § 4-468(d) (2006). But the license would be a property interest within section 541(a)(1) even if the amendment had never been adopted.

"The label . . . that state law affixes to a particular interest in certain contexts is not always dispositive. The principal question is whether the substance of the right or interest in question brings it within the scope of estate property under the Bankruptcy [Code]." <u>In re Nejberger</u>, 934 F.2d 1300, 1302 (3d Cir. 1991). Under Pennsylvania law even before the amendment, such licenses were transferable items having substantial monetary value. 47 Pa. Stat. Ann. § 4-468(a)(1) (1977); <u>21 West Lancaster Corp.</u> v. <u>Main Line Rest., Inc.</u>, 790 F.2d 354, 357 (3d Cir. 1986).

The fact that agency or other third-party approval is required for a transfer does not take the interest outside section 541's language or its policy; broadcast licenses and condominiums are common examples. As the Seventh Circuit said in <u>In re Barnes</u>, 276 F.3d 927, 928 (7th Cir. 2002), "the few cases to address the issue hold that a liquor license, provided it is salable, is indeed property within the meaning of section 541 of the Bankruptcy Code." <u>Accord</u> <u>In re Nejberger</u>, 934 F.2d at 1302 (addressing Pennsylvania liquor license).

-4-

This is not the end of the story. With a few exceptions, "[a] bankruptcy estate cannot succeed to a greater interest in property than the debtor held prior to bankruptcy." In re NTA, LLC, 380 F.3d 523, 528 (1st Cir. 2004); see also 11 U.S.C. § 541(d). What Ground Round had at the point of bankruptcy was legal title to the license, the right to retain and enjoy its benefits during the real estate lease, and an obligation to restore the license to the partnership at the end of the lease.

Ground Round's rejection of the lease did not terminate Ground Round's title to the license, but it did end its right under the contract to continued use of the license and left the partnership with ordinary remedies for breach of contract. See 11 U.S.C. § 365(g). Under state law, specific performance would normally be available to retrieve the license for the partnership even before the amendment. Cochrane v. Szpakowski, 49 A.2d 692, 694 (Pa. 1946); Tomb v. Lavalle, 444 A.2d 666, 668 (Pa. Super. Ct. 1981).

On this appeal, Ground Round argues that the contractual obligation to return the license vanished when it rejected the lease and that allowing specific performance would undercut the rejection power. The law is in remarkable confusion on this issue. Some judges think that enforcing the turnover of property would mimic the rejected contractual obligation, thereby undercutting the

rejection power itself, and that only money damages are permitted;[1] to others, and especially the commentators who criticize the former decisions, a specific performance right to property under state law is left undisturbed and should be enforced--unless the Bankruptcy Code otherwise bars this outcome.[2]

The Code does not directly address this problem. Congress has sought solutions to specific applications, expressing sympathy for enforcement in certain cases with qualifications, see 11 U.S.C. §§ 365(i); 365(j); 365(n); 1113, but this can be taken both ways: either as creating exceptions to a non-enforcement principle or as a tendency toward the opposite broader principle of enforcement. We see no need here to attempt an overall solution; indeed, a bright-line solution may be a bad answer.

Where a claimant holds something akin to a property right in something held by the debtor, that right survives bankruptcy and

---

[1]E.g., Midway Motor Lodge of Elk Grove v. Innkeepers' Telemanagement & Equip. Corp., 54 F.3d 406, 407 (7th Cir. 1995); In re Richmond Metal Finishers, Inc., 756 F.2d 1043, 1048 (4th Cir. 1985). A now elderly First Circuit case could be read as assuming this view, but the contract there specified performance or a return of escrow (which the court ordered). See Gulf Petro., S.A. v. Collazo, 316 F.2d 257, 260 (1st Cir. 1963).

[2]Westbrook, A Functional Analysis of Executory Contracts, 74 Minn. L. Rev. 227, 257, 260-61, 269, 336 (1989); Andrew, Executory Contracts in Bankruptcy: Understanding "Rejection," 59 U. Colo. L. Rev. 845, 906-11 (1988); see also In re Bergt, 241 B.R. 17 (Bankr. D. Alaska 1999); In re Walnut Assocs., 145 B.R. 489, 494 (Bankr. E.D. Pa. 1992); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 687, 709 (Bankr. S.D.N.Y. 1992); cf. Jackson, The Logic and Limits of Bankruptcy Law 108-13 (1986).

remains enforceable to recover the property from the estate,[3] except where that right is cut off by provisions of the Bankruptcy Code.[4] The nature of an interest under the Code is determined by state law. Butner, 440 U.S. at 54-55. Under Pennsylvania law, the partnership's interest in the license is pretty close to that of a lessor, see O'Neill v. Keegan, 103 A.2d 909, 910-11 (Pa. 1954), and was likely framed in terms of a transfer and re-transfer solely because state law did not permit a lease.

Ground Round counters that because the liquor license could not be leased at the time that the transfer was made, the sale coupled with the re-purchase provision constituted an illegal attempt to circumvent Pennsylvania law. It then argues that a Pennsylvania court would not order specific performance of an

---

[3]See 11 U.S.C. § 541(d); Whiting Pools, 462 U.S. at 205 n.10; see also Conn. Gen. Life Ins. Co. v. Universal Ins. Co., 838 F.2d 612, 618 (1st Cir. 1988); 1 Queenan et al., Chapter 11 Theory and Practice § 9.20. See generally In re Lavigne, 114 F.3d 379, 387 (2d Cir. 1997) ("[T]he Code does not determine parties' rights regarding the contract and subsequent breach. To determine these rights, we must turn to state law.").

[4]Some courts have held that a nondebtor's equitable interest can never be cut off by the trustee due to the operation of section 541(d). See In re Quality Holstein Leasing, 752 F.2d 1009, 1013 (5th Cir. 1985). Other courts disagree and hold that, notwithstanding section 541(d), the trustee may be able to use his strong-arm powers under section 544(a) to extinguish a nondebtor's equitable interest if the debtor held title. See Belisle v. Plunkett, 877 F.2d 512, 515 (7th Cir. 1989). We need not take a position on this issue, but assume arguendo that the trustee's strong-arm powers can extinguish a nondebtor's equitable interest.

-7-

unlawful contract and that the partnership would be "estopped in Pennsylvania courts from enforcement of this equitable relief."

Although a court may refuse to enforce an illegal contract, Ground Round makes no effort to show that a Pennsylvania court would regard the re-transfer clause as unlawful. After all, both the initial and re-transfer are subject to regulatory approval. See 47 Pa. Stat. Ann. § 4-468(a)(1). And, if the arrangement were unlawful, perhaps it would invalidate the original transfer and not just the re-transfer. See Davis v. Pittsburgh Nat. Bank, 548 A.2d 1326, 1329 (Pa. Commw. Ct. 1988).

As for estoppel, Ground Round was complicit in the arrangement. The company does not point to evidence of the conventional estoppel elements of representation and reliance. See Novelty Knitting Mills, Inc. v. Siskind, 457 A.2d 502, 503-04 (Pa. 1983). Presumably, if the lease had terminated without bankruptcy, Pennsylvania courts would have enforced the contractual re-transfer if Ground Round had refused to do it.

The more serious arguments by Ground Round depend solely on the Bankruptcy Code. The first is based on section 101(5), 11 U.S.C. § 101(5), which defines what is a "claim" for dischargeability and other purposes under the Bankruptcy Code; and arguably the partnership's request for specific performance does fall within this definition. The term "claim" is defined by section 101(5) to mean either:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

The BAP, in an attempt to classify the interest as something other than a "claim," said tersely that under Pennsylvania law specific performance was available because the license is regarded as unique and that therefore the breach did not give rise to a right to payment under subsection (B). In re Ground Round, 335 B.R. at 261-63. The premise is correct, but the conclusion does not follow. The failure to return the license would give rise to a damage claim as an alternative to specific performance,[5] so arguably subsection (B) would class this equitable remedy as a claim.

However, Ground Round has provided no reason why classification as a "claim" matters. One must hold a "claim" in order to seek a share of remaining estate assets in a final distribution, and a "claim" is what is discharged when the

---

[5]See Trachtenburg v. Sibarco Stations, Inc., 384 A.2d 1209, 1211-12 (Pa. 1978); Hawley Bank v. Santini, 389 A.2d 671, 672-73 (Pa. Super. Ct. 1978); see also 5 Corbin on Contracts § 1001 (1964), as quoted by 3 Queenan et al., Chapter 11 Theory and Practice § 21.06.

bankruptcy terminates.  See 3 Epstein et al., Bankruptcy, § 11-1, at 70-71 (1992).  But the partnership is not seeking a share of remaining assets but a return of specific property; and no one is seeking to impose post-discharge obligations on Ground Round.

Ground Round may think that the holder of a claim can never seek a return of property because this would violate the principle of equal treatment of creditors; but in fact secured creditors regularly get back secured property or its equivalent to pay their claims.  E.g., In re Carvalho, 335 F.3d 45, 47 (1st Cir. 2003).  That one has a claim does not automatically foreclose a demand for specific property if state law recognizes the interest and the Bankruptcy Code does not disallow it.[6]

Arguing for disallowance under the Code, Ground Round relies on section 544, 11 U.S.C. § 544(a)(1).  For our purposes the key language of section 544 is as follows:

> The trustee shall have, as of the commencement of the case . . . the rights and powers of . . . a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a

---

[6]See Andrew, supra, at 926-27 ("The non-debtor may or may not have a claim for the debtor's breach of contract . . . and that claim may or may not be dischargeable, but those issues simply do not relate to the question whether the non-debtor has a right in or to the property itself."); 2 Epstein et al., Bankruptcy, § 7-10, at 300 ("The bankruptcy has no effect [on a secured claim] because bankruptcy honors the property principle of derivative title, and the lienor's interest in the debtor's property is excluded from the bankruptcy estate.").

simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

Section 544 invokes state law--here, Pennsylvania's law-- to determine the rights of the hypothetical lien creditor. <u>See</u> <u>In re Hilde</u>, 120 F.3d 950, 952 (9th Cir. 1997). And, under state law as it stood when the lease was made, it appears that a contract-claim litigant could <u>not</u> have obtained a lien on the liquor license. <u>See</u> <u>1412 Spruce</u>, 474 A.2d at 283; <u>In re Revocation of Liquor License No. R-2193</u>, 456 A.2d 709, 711 (Pa. Commw. Ct. 1983).

By contrast, the later amended statute would permit such liens and would also permit a security interest to be created in the license by its owner to secure an obligation to a third party.[7] Accordingly, if the whole transaction was to occur anew today, the hypothetical lien creditor in section 544(a) might well have priority today over a party with the interest in the license held by the partnership, which we will assume <u>arguendo</u> but need not decide.

Thus, everything comes down to whether pre-amendment or post-amendment law governs in determining the rights of the hypothetical lien creditor. Pennsylvania courts follow the common practice of avoiding retroactivity in civil statutes unless the

---

[7]<u>See</u> 47 Pa. Stat. Ann. § 4-468(d); <u>In re J.B. Winchells, Inc.</u>, 106 B.R. 384, 391-92 (Bankr. E.D. Pa. 1989). In fact, state tax authorities supported the amendment so that they could "execut[e] on licenses held by delinquent taxpayers." <u>In re Pompeo</u>, 195 B.R. 43, 47 n.5 (Bankr. W.D. Pa. 1996).

-11-

statute specifies otherwise, 1 Pa. Cons. Stat. § 1926; accord Stroback v. Camaioni, 674 A.2d 257, 260 (Pa. Super. 1996); but how to apply this rubric is debatable. The lease was made prior to the statute; the bankruptcy and the specific performance claim are being made post-amendment.

Although the issue was not extensively briefed, we think applying the amendment in this case would undermine reasonable expectations. True, once the amendment was passed, the partnership was apprised that the license could now be attached; but the partnership was no longer in a position to protect itself by insisting on getting an explicit security interest in the license from Ground Round, as it could have done if the amendment had occurred early in 1977.

One might ask whether this outcome would be fair to someone who lent money to Ground Round, believing that Ground Round owned the license outright; but no such person has appeared, nor does the Bankruptcy Code protect every case of lender reliance. Retroactivity questions tend to be fact-specific and we have made our best guess as to how a Pennsylvania court would rule as to the retroactivity issue.

If Pennsylvania law permitted a lease of the license, that is likely what the parties would have done; and then--when Ground Round rejected the lease--any right Ground Round held in the license would automatically have expired. The formal structure of

a bona fide transaction is not lightly to be disregarded in bankruptcy.  See In re Lazarus, No. 06-1982, 2007 U.S. App. LEXIS 388 (1st Cir. Jan. 9, 2007).  But an outcome that mimics this underlying reality has something in its favor.

Affirmed.