# United States Court of Appeals
## For the First Circuit

No. 10-2270

LUIS A. SOTO-RIOS; BRENDA TOSADO-ARBELO,

Plaintiffs, Appellants,

v.

BANCO POPULAR DE PUERTO RICO,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Lipez, Ripple,* and Howard,
Circuit Judges.

Isabel M. Fullana, with whom Garcia-Arregui & Fullana, P.S.C. was on brief, for appellants.
Lucas A. Córdova-Ayuso, with whom Patrick D. O'Neill and O'Neill & Gilomore, P.S.C. were on brief, for appellee.

November 23, 2011

*Of the Seventh Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**.  Luis Soto-Rios and Brenda Tosado-Arbelo ("debtors") filed for bankruptcy under Chapter 11, years after they had executed three mortgage deeds in favor of Banco Popular de Puerto Rico.  In the midst of the bankruptcy proceedings, the debtors sought to avoid the mortgages, and to prevent any post-petition actions that would perfect them.  See 11 U.S.C. §§ 362(a), 544(a), 547(b).  On summary judgment, the bankruptcy court rejected the debtors' efforts.  When the district court later affirmed this decision, the debtors pursued this appeal before us.  We affirm.

### I.   BACKGROUND

In 2004 and 2005 the debtors executed the three mortgage deeds to secure two loans.  The mortgagee Banco Popular, in turn, presented the documents for recording to the Registry of the Property for Puerto Rico (hereinafter, "registry" or "registrar").  Two deeds were presented in October 2004, and the third approximately ten months later in 2005.  Due to an administrative backlog, however, the three presented mortgage deeds were still pending recordation when the debtors filed for bankruptcy nearly three years later.[1]

---

[1]Because the registry has long suffered a substantial backlog, while this appeal was pending the Commonwealth of Puerto Rico enacted the "Property Registry Facilitation Act."  Effective February 10, 2011, all documents presented as of April 30, 2010, with enumerated exceptions, are deemed registered as a matter of law.  See 2010 P.R. Laws No. 216; P.R. Reg. for the Implementation of Act No. 216.  The effects of the new law have not been fully

During the bankruptcy proceedings, Banco Popular filed a secured proof of claim regarding the loan debts putatively secured by the three mortgage deeds. In response, the debtors filed an adversary proceeding asserting their right to avoid the mortgages under certain provisions of the Bankruptcy Code, including the automatic stay, the "strong arm" power and the avoidance of preferential transfers.[2]  See 11 U.S.C. §§ 362(a)(5), § 544(a), 547(b).  After an exchange of pleadings, the parties agreed that the case could be resolved on summary judgment and subsequently filed competing motions.  The bankruptcy court granted Banco Popular's motion and dismissed the debtors' adversary action.  In ruling that exceptions to the automatic stay and strong arm power applied, 11 U.S.C. §§ 362(b)(3), 546(b)(1)(A), the court rejected the debtors' argument that, until the deeds were fully recorded, Banco Popular lacked a pre-petition property interest.  The bankruptcy court also ruled that the debtors failed to establish the necessary elements of a preferential transfer, 11 U.S.C. §§

---

litigated in this case or in Puerto Rico generally.  See infra n.5. Accordingly, we do not reach Banco Popular's suggestion that Law 216 renders this appeal moot, and instead affirm the lower court's decision on the merits.

[2]A debtor in possession stands in the shoes of the bankruptcy trustee, generally having the same rights, powers, duties and functions, with certain exceptions.  See 11 U.S.C. § 1107(a). Accordingly, we refer to "the debtors" and "the bankruptcy trustee" interchangeably where appropriate.

547(b), 547(e)(1)(A). After an unsuccessful appeal to the district court, this appeal followed.

## II. STANDARD OF REVIEW AND ISSUES ON APPEAL

Bankruptcy practice encompasses traditional summary judgment standards, as provided under Rule 56 of the Federal Rules of Civil Procedure. See Bank. R. 7056; In re Varrasso, 37 F.3d 760, 762 (1st Cir. 1994). Accordingly, summary judgment is warranted only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Varrasso, 37 F.3d at 763. When a bankruptcy court issues summary judgment, the losing party may seek intermediate review by a district court or a bankruptcy appellate panel. See In re Vázquez Laboy, 647 F.3d 367, 373 (1st Cir. 2011); see also 11 U.S.C. § 158. With either path, our review focuses on the bankruptcy court's decision, and we do not afford special deference to the intermediate decision. Vázquez Laboy, 647 F.3d at 374; In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001). We conduct de novo review of the bankruptcy court's decision. In re Colarusso, 382 F.3d 51, 57-58 (1st Cir. 2004).

Before us, the debtors first challenge the bankruptcy court's application of the exceptions to the automatic stay and trustee strong arm power on the sole basis that Banco Popular never obtained the required pre-petition property interest. They contend that because recording is essential to the valid constitution of a

-4-

mortgage deed under Puerto Rico law, the three deeds evidenced no more than unsecured personal obligations at the time that the bankruptcy petition was filed. The debtors also argue that the bankruptcy court erred in ruling that they failed to establish the elements of a preferential transfer. See 11 U.S.C. § 547(b). We address each argument in turn.

### III. GOVERNING LAW AND ANALYSIS

### A. Exceptions to Automatic Stay and Strong Arm Power

Resolution of this appeal involves the interplay between and among provisions of the Bankruptcy Code and Puerto Rico law. Certain portions of the Bankruptcy Code serve as the framework for the legal issue, and so we begin our endeavor there. We then will turn to navigate local law. While the path is a bit meandering, in the end the conclusion is clear.

### 1. Pertinent Bankruptcy Code Provisions

As a familiar bedrock of bankruptcy law, the automatic stay creates "breathing room" for debtors, at least temporarily, by foreclosing creditors from pursuing certain collection efforts against the debtor's assets once a petition for bankruptcy has been filed. 11 U.S.C. § 362(a); In re 229 Main St. Ltd. P'ship, 262 F.3d 1, 3 (1st Cir. 2001). The stay bars a variety of creditor activities, including "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4); see also 11 U.S.C. § 362(a)(5). This broad proscription has limits.

-5-

Pertinent here, section 362(b)(3) provides that the stay does not extend to "any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of [the Bankruptcy Code] . . . ." Application of this exception to the stay depends upon the existence of three conditions: "there must be (1) an 'act to perfect' (2) an 'interest in property' (3) under circumstances in which the perfection-authorizing statute fits within the contours of section 546(b)[ ]." 229 Main St., 262 F.3d at 4 (emphasis added).

While section 362(b)(3) limits the automatic stay, its companion statute, section 546(b), limits the debtor's power to avoid statutory liens under the so-called strong arm provision. See id. The instant that a bankruptcy petition is filed, the bankruptcy trustee is vested with the status of a hypothetical bona fide purchaser of real property, and may ordinarily avoid any transfer of the property or obligation of the debtor to the extent allowed under state law. See 11 U.S.C. § 544(a)(3); In re Ryan, 851 F.2d 502, 505 (1st Cir. 1988); see also 11 U.S.C. § 544(a)(1) (trustee deemed to have status of hypothetical judicial lien holder). Section 546(b)(1)(A), however, staves off this pervasive power when "generally applicable law . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection."

11 U.S.C. § 546(b)(1)(A) (emphasis added); see also 11 U.S.C. § 546(b)(1)(B).  For a creditor to enjoy this haven, "(1) the creditor must act pursuant to a law of general applicability; (2) that law must allow the creditor to perfect an interest in property; and (3) such perfection must be effective against previously acquired rights in the property."  229 Main St., 262 F.3d at 10 (emphasis added).  The gist of this exception "is that the filing of a bankruptcy petition does not prevent the holder of an interest in property from perfecting its interest if, absent the bankruptcy filing, the interest holder could have perfected its interest against an entity acquiring rights in the property before the date of perfection."  Id. at 12 (quotations omitted).

As earlier noted, the debtors' challenge to the application of sections 362(b) and 546(b)(1)(A) is solely based on the existence of a single element common to both exceptions -- whether Banco Popular had acquired a pre-petition "interest in property."  See 229 Main St., 262 F.3d at 9 ("the simultaneous postpetition creation and perfection of a lien may come within the pertinent exception to the automatic stay so long as the creditor holds a valid prepetition interest in the property").  We limit our review accordingly.

## 2. **Meaning of "Interest in Property"**

Local law ordinarily dictates the existence and extent of an entity's interest in property.  See 229 Main St., 262 F.3d at 6;

Butner v. United States, 440 U.S. 48, 54-55 (1979); see also In re The Ground Round, Inc., 482 F.3d 15, 17 (1st Cir. 2007). We emphasize, however, that "interest in property" under sections 362(b)(3) and 546(b)(1)(A) is a federal statutory term, and "the meaning of [language under the Bankruptcy Code] is a matter of federal law". See The Ground Round, Inc., 482 F.3d at 17. Thus, our primary focus is whether Banco Popular gained a pre-petition property interest in substance and scope that is superior to that of a bona fide purchaser or a judicial lien holder in accord with sections 362(b)(3) and 546(b)(1)(A) and as informed by the laws of Puerto Rico. We thoroughly analyzed the meaning of the federal term "interest in property" under the exceptions at issue here in 229 Main Street, 262 F.3d at 5-7. Therefore, we briefly review that decision before proceeding further.

In 229 Main Street, the Commonwealth of Massachusetts sought relief from the automatic stay so that it could establish and secure a lien for monies that it had expended in the pre-petition environmental cleanup of the debtor's property. Id. at 3. Under Massachusetts environmental law, a debt comes into being once the Commonwealth incurs the cleanup expenses, which simultaneously ripens into a lien and becomes perfected when a claim statement is recorded, registered or filed. See id. at 4, 7. The Commonwealth had notified the property owner by letter of its intent to record a claim statement and had entered into administrative proceedings

relative to liability and the amount owed.  Id. at 3. But the debtor filed for bankruptcy before the administrative proceedings had concluded and before a claim statement had been filed to effect the recording of a lien.  Id.

These circumstances required us to determine whether the Commonwealth possessed a pre-petition "interest in property" under sections 362(b)(3) and 546(b)(1)(A).  See id. at 3-7.  Applying the plain language of the Bankruptcy Code, we held that the federal statutory term "interest in property" is "unequivalent to, and broader than," the term "lien."  Id. at 7.  We also concluded that the "amalgam" of circumstances presented in the case gave rise to a pre-petition property interest.  See id.  In particular, we focused on the following:  "the Commonwealth's expenditures, together with its notice of intent to record a lien and its tenacious pursuit of that lien through administrative channels."  Id.  With this backdrop, we turn to examine the nature of Banco Popular's pre-petition interest under the mortgage deeds which it had presented for recording, as informed by Puerto Rico law.

**3.  <u>Pre-petition "Interest in Property" Informed by Puerto Rico Law</u>**

In general, a mortgage comprises a conveyance or retention of an interest in real property executed for the benefit of the mortgagee to secure payment of a debt.  See generally Restatement (Third) of Property: Mortgages § 1.1 (1997); 54A Am. Jur. 2d <u>Mortgages</u> §§ 1, 138 (2009); see also <u>Liechty</u> v. <u>Descartes</u>

Saurí, 9 P.R. Offic. Trans. 660 (1980) (holding that "mortgage" encompasses "a property right").  Some jurisdictions subscribe to the so-called "title theory" in which a mortgage effects a conditional conveyance vesting in the mortgagee legal title of the property, which title is defeated once the mortgage debt is paid.

 See generally 54A Am. Jur. 2d Mortgages §§ 1, 136 (2009); Restatement (Third) of Property:  Mortgages § 4.1, cmt. a(1) (1997).  Others follow the "lien theory," under which the mortgage is mere security for the debt, creating a lien interest without divesting the mortgagor of legal title during the period of debt repayment.  See generally 54A Am. Jur. 2d Mortgages §§ 1, 137; Restatement (Third) of Property: Mortgages § 4.1, cmt. a(2).  Under either system, the act of recording, rather than marking the inception of the mortgage interest itself, impacts the strength of the mortgagee's security interest in the property relative to other persons or entities claiming a competing interest.  See generally 55 Am. Jur. 2d Mortgages §§ 278-81 (2009); Restatement (Third) of Property: Mortgages § 7.1, cmt. a (1997).  In some jurisdictions even defectively executed mortgage documents may give rise to a security interest in the property and be enforced as, for instance, an equitable mortgage.  See generally 54A Am. Jur. 2d Mortgages §§ 10-11, 13, 82; 55 Am. Jur. 2d Mortgages § 301; see, e.g., In re Williams, 584 S.E.2d 922 (W. Va. 2003); Citizens Nat'l Bank in Zanesville v. Denison, 133 N.E.2d 329 (Ohio 1956).

In their briefing, both parties use nomenclature suggesting that Puerto Rico is a lien theory jurisdiction. But they focus on different provisions of Puerto Rico law to reach opposite conclusions on the critical issues. The debtors assert that recordation of a mortgage deed is so essential to its validity under Puerto Rico mortgage law that even when such a deed is presented to the registry for recording, no property interest vests until the deed is actually recorded by the registrar. According to the debtors, because the mortgage deeds were unrecorded at the time the bankruptcy petition was filed, they were no more than unsecured personal obligations and did not confer a pre-petition property interest on Banco Popular. Meanwhile, Banco Popular stands on Puerto Rico's relation back doctrine to contend that a bona fide third party who acquires rights in real property after a mortgage security interest in the same property has been presented and is pending recordation acquires the property interest subject to the perfection of the first-in-time security interest. Thus, according to Banco Popular, the execution of the mortgage deeds along with the acts of presentment sufficiently vested in it a pre-petition interest in the real property which the Bankruptcy Code allows to continue to perfection.

After review of the relevant local law, along with the instruction of 229 Main Street, we agree with Banco Popular's position that it attained a pre-petition "interest in property"

-11-

within the meaning of sections 362(b)(3) and 546(b)(1)(A) of the Bankruptcy Code.

In Puerto Rico, the nature and effect of mortgages is governed by the Commonwealth's Mortgage and Property Registry Act of 1979 and portions of its Civil Code. See P.R. Laws Ann. tit. 30, § 2001 et. seq. (2005); P.R. Laws Ann. tit. 31, § 5001 et seq. (1991). The mortgage law provides:

> A mortgage directly and immediately binds an estate and the rights on which it is imposed, whoever its owner or titleholder may be, to the fulfillment of the obligation for the security of which it was constituted.
> Recorded mortgages shall be strictly real encumbrances, permitting mortgage loans to be made regardless of any subsequent right that is acquired on the same property or mortgage rights. . . .

P.R. Laws Ann. tit. 30, § 2551; see also P.R. Laws Ann. tit. 31, § 5043 (effect of mortgage on property); P.R. Laws Ann. tit. 30, § 2601 (defining "voluntary mortgages"). The civil code sets forth the "essential requisites" of a mortgage contract, including that a mortgage "be constituted to secure the fulfillment of a principal obligation." P.R. Laws Ann. tit. 31, §§ 5001, 5002.

Additionally, the civil code prescribes that "it is indispensable, in order that the mortgage may be validly constituted, that the instrument in which it is created be entered in the registry of property." P.R. Laws Ann. tit. 31, § 5042. A companion statute under the mortgage law also provides that "[i]n order for voluntary mortgages to be validly constituted" the

-12-

mortgage must be "stipulated in a deed" and must "be recorded in the Property Registry." P.R. Laws Ann. tit. 30, § 2607. While recording is a necessary prerequisite to "valid constitution," the original date a mortgage deed is presented to the registry for recording establishes priority between competing registrations. Pursuant to P.R. Laws Ann. tit. 30, § 2256:

> Registered titles shall become effective for third parties from the date of their registration. For all intents and purposes, the registration date, including the determination of the term needed for cancellation of entries, must appear in the registration itself.
> In order to determine preference between two or more registrations of the same property, attention shall be given to the date, hour and presentation number of the respective titles in the Registry.

The debtors would have us conclude the analysis here. They take the cut-and-dried position that a foundational prerequisite for valid constitution was not in place and therefore Banco Popular enjoyed no more than a personal obligation, not an interest in property, at the time the bankruptcy proceedings commenced. To support their stance, the debtors point to several decisions of the Puerto Rico Supreme Court and those of federal courts interpreting Puerto Rico law. See, e.g., Rosario Pérez v. Registrador, 15 P.R. Offic. Trans. 644 (P.R. 1984); Roig Commercial Bank v. Dueno, 617 F. Supp. 913 (D.P.R. 1985); In re Las Colinas, Inc., 426 F.2d 1005 (1st Cir. 1970).

-13-

Without doubt, the debtors' cases set forth the fairly unremarkable position that "recordation is a constitutive act through which the security produces real effects and becomes operative erga omnes [that is, "toward all"] in the sphere of real rights." Rosario Pérez, 15 P.R. Offic. Trans. 644.[3] Some do appear to suggest that an unrecorded mortgage deed provides a lender with no more than an unsecured personal debt under Puerto Rico law. See, e.g., Roig Commercial Bank, 617 F. Supp. at 915. The cases, however, do not address the precise question before us -- namely, whether a creditor that has done essentially all that it can by timely presenting otherwise valid mortgage deeds for recording has obtained an interest in the property identified in the mortgage deed.

For example, in Rosario Pérez the Supreme Court of Puerto Rico faced the question of whether the registry had properly refused to record a mortgage deed that had been presented for recording after the presentment of a writ of attachment barring alienation of the same property. Rosario Pérez, 15 P.R. Offic. Trans. 644. The propriety of the registrar's decision depended on application of a local statute that precluded recordation of a "dispositive act" against property once a judicial order barring alienation was presented, but provided that "dispositive acts executed prior to the entry are not affected." Id. In affirming

---

[3]No pincite is available for this decision.

the registry, the court determined that no dispositive act had occurred relative to the mortgage deed prior to the entry of the writ because "the mortgage had not been recorded and, therefore, the real security of the mortgage had not been constituted." Id. This case offers us virtually no guidance, however, because unlike the creditor in Rosario Pérez, Banco Popular actually presented mortgage deeds to the registry for recording well before the debtors obtained their hypothetical status of bona fide purchasers or judicial lien holders. Rosario Pérez simply does not speak to the legal effect of a creditor's prior presentment.

To cite one more example, in Roig Commercial Bank the United States District Court for the District of Puerto Rico faced the question of whether a mortgagee was a party in interest with a right to redeem property that the Internal Revenue Service had seized and then sold at public auction. Roig Commercial Bank, 617 F. Supp. at 914. The creditor originally had presented the mortgage deed for recording before the tax seizure, but had withdrawn the document. After the tax sale, the creditor presented the deed for recording a second time and it was later recorded. The court determined that the creditor did not have a pre-seizure lien because "[r]ecording is essential to the validity of a mortgage," and thus, "a mortgage must be recorded in order to exist." Id. at 915. Additionally, it ruled that the lender did not have a pre-seizure interest in real property because "[f]ailure

-15-

to promptly record the mortgage deed turned the promissory note into a personal obligation, unsecured, solely enforceable against the maker." Id. at 915. Again, this case offers us no real help because the creditor did not claim a property interest or a lien based on a prompt presentment of an otherwise valid mortgage deed which was filed with the registry before a later-in-time interest developed.[4]

---

[4]In a post-oral argument submission made pursuant to Federal Rule of Appellate Procedure 28(j), the debtors argue that their position is further strengthened by Puerto Rico Farm Credit, ACA v. Ruiz-Valentin, No. 09-1377 (MEL), 2010 WL 1485668 (D.P.R. April 9, 2010) ("the 1377 case"). In that case, the mortgagors defended against a foreclosure by arguing that the relevant mortgages had been presented to the appropriate registries, but had not been recorded. Id. at *2. The court ultimately allowed foreclosure only against properties which were subject to recorded mortgages. As the debtors here observe, the district court relied on a Puerto Rico intermediate appellate court decision which held that foreclosure of the unrecorded mortgages was not permitted even though the deeds had been presented and were then-pending recordation. Id. at *4 (citing Cooperativa de Ahorro y Crédito de Aguada v. Ocasio Rodriguez, No. KLAN20081882, 2009 WL 2843418 (P.R. Cir. June 30, 2009)). There is more to the story of the 1377 case, however. At roughly the same time, the same issue -- involving the same mortgagee and some of the same mortgagors -- was before a different federal district court judge. See Puerto Rico Farm Credit, ACA v. Ruiz-Valentin, No. 09-1348CCC, 2010 WL 2088744 (D.P.R. May 21, 2010) ("the 1348 case"). Although the district court in the 1348 case quoted extensively from Ocasio Rodriguez, id. at *4, it also observed that the Puerto Rico Supreme Court had not passed on the issue, and thus it certified to the Supreme Court the question of whether a creditor can seek foreclosure of a mortgage where the deed has been presented but not recorded. Id. at *5. Shortly thereafter, the judge in the 1377 case stayed those proceedings with respect to the unrecorded mortgages pending the resolution of the certified question. Law 216 was enacted and became effective during the pendency of the ensuing Supreme Court case, see supra n.1. After being informed by the mortgagee that Law 216 resulted in the presented mortgages becoming properly registered, the Supreme Court ruled the certified question moot.

-16-

At the same time, at a minimum Puerto Rico law regards presentment to be a legally significant act that initiates the certifying role of the registrar, begins the process of registration, and as previously noted, operates as the decisive point for resolving any competing registrations in the same property. See P.R. Laws Ann. tit. 30, § 2256. Generally, once presented, the registrar must pass judgment on the documents within sixty days, or some "just cause" period thereafter, and then either act to record them or alert the applicant to any defect. See P.R. Laws Ann. tit. 30, §§ 2255, 2267, 2270-72. Indeed, the registrar must keep detailed records to memorialize the very "moment of presentation" by entering "the exact time of day" into the day book (filing entry). See P.R. Laws Ann. tit. 30, §§ 2152, 2154, 2253. Such precision is required, of course, because the filing entry is "intimately linked to the registry principle called rank or priority"; the first filing entry prevails. Gasolinas, P.R. v. Registrador, 155 P.R. Dec. 652, 675 (P.R. 2001).

---

Puerto Rico Farm Credit, ACA v. Ruiz Valentin (P.R. Apr. 15, 2011) (case number unavailable). The judge in the 1348 case then ruled that the mortgagor's defense to foreclosure "had been dispelled by the effects of Law 216" and granted the mortgagee's long-pending motion for summary judgment. Puerto Rico Farm Credit, ACA v. Ruiz-Valentin, No. 09-1348CCC, 2011 WL 2293220, at *2 (D.P.R. June 8, 2011). The 1377 case apparently remains open. The upshot of this tangled history is twofold. First, it reinforces our decision to eschew resolution of the appellee's mootness claim, supra n.1. Second, the rulings in both the Puerto Rico Supreme Court and the 1348 case suggest that the debtors have placed significantly more weight on the 1377 case and Ocasio Rodriguez than either can bear.

-17-

Puerto Rico law also circumscribes whether and how presented documents may be withdrawn before recording occurs, requiring "notarized consent of the person entitled to withdraw" if other documents may be "affected adversely by the withdrawal." P.R. Laws Ann. tit. 30, § 2254. The most pointed statutory clue is the relation back provision establishing the moment of presentment as the priority marker. P.R. Laws Ann. tit. 30, § 2256; Gasolinas, 155 P.R. Dec. at 675 ("[Presentment's] purpose is to acknowledge, in a precise manner, the exact point or time of such filing, inasmuch as same guarantees the filing party his turn, according to order of arrival."). In other words, "[a] filing of an entry is an implicit advisement to everyone, until the document is actually registered. A deed, once filed and deemed recordable, retains all the effects of stated registration." Id. (citing to and parenthetically quoting Flores v. Arroyo, 43 P.R. Dec. 282, 283 (1932)); see also generally P.R. Laws Ann. tit. 30, §§ 2101, 2152.

To diffuse the importance of presentment, the debtors contend that for the relation back doctrine "to be activated, an act to record must be undertaken by the [registry]," yet "such an act is clearly stayed" by the automatic stay provision. They also argue that "[r]ecordation cannot be presumed upon the presentation of documents for inscription with the Registrar" because the registrar has a legal duty "to review and qualify the documents presented for inscription before the act of recording can take place."

-18-

We recognize that the relation back provision speaks of competing "registrations," P.R. Laws Ann. tit. 30, § 2256, and that the registrar bears the legal obligation of "passing judgment" on presented documents to determine whether to record them, P.R. Laws Ann. tit. 30, § 2267. We further acknowledge that under Puerto Rico law recording is a "constitutive" act for a mortgage, and without the existence of a mortgage, a creditor only has an unsecured personal obligation regarding the underlying debt. See Rosario Pérez, 15 P.R. Offic. Trans. 644; Roig Commercial Bank, 617 F. Supp. at 915.

These rules do not, however, preclude the conclusion that presentment, though arguably falling short of creating a valid mortgage lien, could create an interest in the real property superior to a later-in-time bona fide purchaser or judicial lien holder. As we held in 229 Main Street, "interest in property" is a broader term than "lien." 229 Main St., 262 F.3d at 7. We also concluded that a creditor had obtained a pre-petition "interest in property" under circumstances in which it had incurred a debt, had a present right to create and record a lien, and had affirmatively pursued that right via administrative channels. Id. Thus, our task is to consider whether the "amalgam" of circumstances, informed by all relevant aspects of Puerto Rico law, "sufficed to satisfy [the Bankruptcy Code's] 'interest in property' requirement." Id.; see The Ground Round, Inc., 482 F.3d at 17 (emphasizing that "the label

-19-

that state law affixes to a particular [property] interest in certain contexts is not always dispositive."). We find that they do.

Banco Popular presented the latest mortgage deed for recording two years before the debtors' bankruptcy filing. There is no claim that the mortgagee dawdled in doing so. In the normal course of events anticipated by the statutory scheme, there is a fair certainty that, absent noticed and uncured defects, recording of the three mortgage deeds would have occurred well before the debtors filed for bankruptcy. And the record is devoid of any suggestion that the documents were defective in any manner or that Banco Popular bears any responsibility for the lengthy delay. Indeed, the "explanatory statement" prefacing the new Property Registry Facilitation Act indicates that registrar delay has been widespread in Puerto Rico for quite some time without the fault of applicants. See 2010 P.R. Laws No. 216. Moreover, the local statutes give no indication that mere passage of time caused by registrar delay somehow nullifies or expires the filing entry or its priority rank. Cf. P.R. Laws Ann. tit. 30, § 2255 (entry of presentation expires where notified defect is not seasonably corrected).

Like the Commonwealth of Massachusetts as the creditor in 229 Main Street, Banco Popular obtained a concrete, pre-petition debt owed to it by the property owner. See 229 Main St., 262 F.3d at 7 (holding that "debtor was liable to the Commonwealth for past and future clean-up costs"). Even more than Massachusetts, though,

-20-

Banco Popular had acted to secure this right to payment by actually presenting all three executed mortgage deeds to the registrar for recording years before the bankruptcy proceeding commenced. See id. ("the Commonwealth had a present right to record a lien on the Property"). Presentment, as the decisive act for securing rank, provided notice to the public, including to any bona fide purchaser, of the parties' mortgage transaction and the acts to preserve priority. See Gasolinas, 155 P.R. Dec. at 675. Banco Popular thereby took all possible administrative steps in its power to effectuate due recording. See 229 Main St., 262 F.3d at 7 (the Commonwealth "notif[ied] the debtor of its intentions and participat[ed] vigorously in the administrative hearing process"). Ultimately, in our view, this amalgam provided Banco Popular with an "interest in property."

To accept the debtors' narrow view would, in effect, place Banco Popular in the same position as a creditor who, before a bankruptcy petition was filed, either never presented executed mortgage deeds, withdrew presented deeds or failed to correct known defects. This view, however, does not comport with Puerto Rico law, because the act of presenting a mortgage deed itself has legal significance. Moreover, the approach urged by the debtors does not accord with the federal bankruptcy principles that are in play. This is not a situation in which a creditor is jockeying for an undue advantage over other creditors or engaging in harassing debt collection conduct in the midst of bankruptcy proceedings. See Mann v. Chase Manhattan Mortg. Corp., 316 F.3d 1, 3 (1st Cir. 2003)

-21-

(noting that automatic stay provision is designed to "forfend against the disorderly, piecemeal dismemberment of the debtor's estate outside the bankruptcy proceedings"); 229 Main St., 262 F.3d at 9-10 (reviewing policy for exception to trustee strong arm power).

After considering the circumstances through the prisms of both federal bankruptcy law and Puerto Rico law, we are satisfied that Banco Popular enjoyed a pre-petition interest in property within the meaning of sections 362(b)(3) and 546(b)(1)(A). Accordingly, we conclude that the debtors have failed to demonstrate that the bankruptcy court erred in ruling that the exceptions to the automatic stay and the trustee's strong arm power apply in this case. See Butner, 440 U.S. at 56 (a "federal bankruptcy court should take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy ensued").

## B. **Preferential Transfer**

The debtors also challenge the bankruptcy court's ruling that the necessary elements of a preferential transfer were not established. See 11 U.S.C. § 547. We are not convinced.

Pursuant to section 547(b), the bankruptcy trustee is authorized to avoid certain transfers of "an interest of the debtor in property" made during the ninety days preceding the bankruptcy petition, with certain enumerated exceptions. In re Net-Velázquez, 625 F.3d 34, 38 (1st Cir. 2010). For purposes of preferential transfer analysis the timing of a "transfer" depends upon when and

-22-

whether the transfer was "perfected." 11 U.S.C. § 547(e)(2). Under section 547 the "transfer of real property . . . is perfected when a bona fide purchaser of such property from the debtor" cannot acquire an interest superior to the interest of the transferee. 11 U.S.C. § 547(e)(1)(A) (emphasis added). State law governs whether a bona fide purchaser can acquire an interest superior to that of the transferee. See In re Computer Eng'g Assoc., 337 F.3d 38, 45 (1st Cir. 2003).

Applying the Puerto Rico relation back provision, P.R. Laws Ann. tit. 30, § 2256, the bankruptcy court ruled that the transfers of the mortgage deeds to Banco Popular were "perfected" for purposes of section 547 as of the dates of presentment in 2004 and 2005 -- well outside the ninety day window for preferential transfers -- because only a bona fide purchaser presenting documents earlier than Banco Popular could have acquired a superior interest. See 11 U.S.C. § 547(e)(2). The debtors disagree with this ruling, arguing that the mortgage deeds can be avoided as preferential transfers because (1) Puerto Rico's relation back doctrine cannot be applied to determine when Banco Popular's interest became perfected for purposes of section 547(e)(1)(A), and (2) therefore the transfer of the unperfected deeds is deemed to have occurred immediately before the bankruptcy petition was filed in accord with section 547(e)(2)(C). They point to Fidelity Fin. Serv., Inc. v. Fink, 522 U.S. 211 (1998), as their sole legal support for claiming bankruptcy court error. Our review, however, triggers no alarm.

In _Fink_, the Supreme Court rejected a creditor's attempt to rely on a state relation back provision to place perfection of a lien on personal property within the twenty-day period required under the "enabling loan" exception under section 547(c)(3). 522 U.S. at 216. It held that the creditor must have actually acted to perfect its security interest within twenty days, as the Code demands, and the state's relation back doctrine could not "deem" the date of that act as having occurred at an earlier time. See _id._[5] The Court's ultimate conclusion was that a "transfer of a security interest is 'perfected' under [the enabling loan exception] on the date that the secured party has completed the steps necessary to perfect its interest," such that "a creditor may invoke the enabling loan exception only by satisfying state-law perfection requirements within the 20-day period required by the federal statute," section 547(c)(3)(B). _Id._ at 212-13. We find this authority inapposite.

We first note the obvious -- that _Fink_ involved a different Code provision relative to perfection than the one at issue here. Because the case involved personalty -- a car -- rather than realty, the perfection language in _Fink_ tracked section 547(e)(1)(B), which states that perfection occurs when "a creditor . . . cannot acquire a judicial lien that is superior to the interest of the transferee" (emphasis added). Here, on the other hand, we focus on section 547(e)(1)(A), which defines perfection on

_____

[5]The Court in _Fink_ noted that it was resolving a circuit dispute. 522 U.S. at 214 n. 2. Each of the cases cited by the Court involved an automobile loan.

-24-

the basis of an "<u>interest</u> that is superior to the interest of the transferee" (emphasis added). As earlier noted, the Code's differentiation between an "interest" and a "lien" is meaningful, and the debtors here make no effort to take this distinction into account in their reliance on <u>Fink</u>.

More importantly, Banco Popular has not invoked the enabling loan exception and is not looking to rely on the local relation back doctrine to extend a perfection period limited by section 547. <u>See</u> <u>id.</u> at 212. Indeed, the acts taken by Banco Popular to "perfect" its interest in the real property against a bona fide purchaser occurred in 2004 and 2005 -- well before the ninety day preferential transfer time period. <u>See</u> 11 U.S.C. §§ 547(e)(1)(A), (e)(2). In short, we discern no error in the bankruptcy court's decision that the debtors failed to establish the necessary elements of a preferential transfer.

## IV. CONCLUSION

The judgment is **affirmed**.