NOT FOR PUBLICATION

FILED

DEC 14 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP No. CC-12-1131-PaMkBe |
| | ) |
| ANDREA R. BECKFORD,[1] | ) Bankr. No. 10-10591-MW |
| | ) |
| Debtor. | ) Adv. Proc. 10-01280-MW |
| _____ | ) |
| | ) |
| ANDREA R. BECKFORD, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **M E M O R A N D U M**[2] |
| | ) |
| RAKIYA L. JONES, | ) |
| | ) |
| Appellee. | ) |
| _____ | ) |

Submitted Without Argument on November 15, 2012[3]

Filed - December 14, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Mark Wallace, Bankruptcy Judge, Presiding

Appearances:    Andrea R. Beckford pro se on brief; Gregory W.
                Brittain, Esq. on brief for appellee Rakiya L.
                Jones.

_____

[1]   During the course of the bankruptcy case, Andrea R. Lewis was married and took the name, Andrea L. Beckford.  We will refer to her by this name.

[2]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value.  See 9th Cir. BAP Rule 8013-1.

[3]   After examination of the briefs and record, and after notice to the parties, the Panel unanimously determined that oral argument was not needed in an order entered October 4, 2012.  Fed. R. Bankr. P. 8012.

-1-

Before: PAPPAS, MARKELL and BEESLEY,[4] Bankruptcy Judges.

Chapter 7[5] debtor Andrea R. Beckford ("Beckford") appeals the order of the bankruptcy court imposing discovery sanctions and the resulting judgment entered against her determining that the debt she owed to appellees Rakiya L. Jones and Rakiya L. Jones, D.D.S., A Professional Corporation ("Jones"), is excepted from discharge under § 523(a)(4). We AFFIRM.

**FACTS**

Beckford and Jones are licensed dentists. In the Summer of 2006, they formed a partnership to open and operate a dental practice in Beaumont, California, known as Oak Valley Family Dental. Their partnership agreement was oral.[6]

In August 2006, Beckford and Jones, through their professional corporations, entered into loan agreements with MATSCO, a division of Wells Fargo Bank, N.A., to borrow

---

[4] The Honorable Bruce T. Beesley, United States Bankruptcy Judge for the District of Nevada, sitting by designation.

[5] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as Civil Rules.

[6] There was some discussion in the record concerning whether the partnership was between Beckford and Jones, or between Beckford's professional corporation (Andrea R. Lewis, D.D.S., a Professional Corporation) and Jones's professional corporation, Rakiya L. Jones, D.D.S., a Professional Corporation. The fictitious name certificate and California Dental Board certificate for their joint dental practice were issued in the names of the corporations. However, the evidence before the bankruptcy court was that Beckford and Jones were not consistent in whether they considered themselves to be partners individually, or through their professional corporations. Further details and evidence on this point are discussed below.

-2-

$276,618.45 for dental and office equipment, fixtures, and leasehold improvements. Jones and Beckford personally guaranteed the loans (the "Loans").

The practice began seeing patients in January 2007. Jones and Beckford practiced together for approximately six months. The parties agree that Jones approached Beckford in June 2007, and told her that she wanted to disassociate from the partnership. Jones sent a formal letter to Beckford on August 31, 2007, which states: "I and my corporation intend to dissociate from [and not dissolve] the partnership so that you may continue the business of the partnership without disruption or inconvenience." The parties agree that at the time of disassociation, the partnership was not profitable.

Jones obtained a payoff quote on the Loans as of the date of disassociation, August 31, 2007, showing a total due of $221,657.20.

In September 2007, Jones and Beckford met to discuss the terms of Jones withdrawing from the partnership. It appears that Jones sought $26,072.94 for her partnership interest, and wanted Beckford to assume full liability for repayment of the Loans. There is considerable disagreement between the parties on subsequent events, but it is clear that Beckford did not accept the terms suggested by Jones.

Beckford continued to operate the practice and hired an associate, Priscilla Tall, who performed general dentistry. Beckford acknowledges that from her initial hiring, Tall expressed interest in purchasing the practice. Beckford rejected an offer from Tall of $120,000 for the practice. Tall did not make a

-3-

subsequent offer. Beckford appears to have had discussions with three other potential buyers who chose not to purchase the practice.

Jones engaged a dental practice broker, Reno Iannini, to attempt to sell the practice. The bankruptcy court would later be given competing declarations from Iannini and Beckford, each alleging that the other was uncooperative and interfered with prospective buyers. None of the efforts of Jones or Beckford resulted in sale of the practice.

Beckford left the practice in December 2008 to move to the East Coast to be with her ill mother. There is no indication in the record when she returned. During her absence, the practice was operated by Tall.

MATSCO notified Beckford and Jones that they were in default in the Loans, and MATSCO filed suit against them and their professional corporations in San Bernadino Superior Court, seeking payment of $276,618.46. MATSCO v. Andrea L. Lewis, D.D.S., a Prof'l Corp., Case no. CIVDS 910545 (San Bernadino Super. Ct. July 23, 2009). Jones filed a cross-complaint in the state court action against Beckford, seeking $240,000 in damages for breach of fiduciary duty, conversion, willful misconduct, constructive trust, accounting and injunctive relief.

Due to poor economic conditions, Beckford closed the practice in August 2009. She filed chapter 7 petitions for herself and her corporation in January, 2010. On her personal bankruptcy schedules, she listed $1,124,254.62 in total unsecured claims, including a claim by MATSCO for $553,238.00. The state court action was stayed when Beckford filed her bankruptcy petition.

-4-

On April 19, 2010, Jones commenced the adversary proceeding involved in this appeal. In a First Amended Complaint filed on May 19, 2011, Jones sought an exception to discharge for her claims against Beckford under §§ 523(a)(2), (a)(4) and (a)(6); she also asked that Beckford be denied a discharge under §§ 727(a)(3), (a)(4) and (a)(5). The complaint did not specify the amount of Jones's claims against Beckford, but indicated that they resulted from Jones's potential liability and judgment in the MATSCO litigation for $276,620, and for Beckford's alleged failure to pay her $26,072.94 for her interest in the dental practice.

On May 24, 2010, Beckford filed an answer ("Answer") generally denying all allegations. The bankruptcy court entered an Amended Scheduling Order on August 6, 2010, setting a discovery cutoff on January 31, 2011. The cutoff was later extended by stipulation of the parties to February 14, 2011.

On April 1, 2011, Jones filed her first Motion to Compel and for Sanctions. In it, Jones argued that Beckford had walked out of her deposition without cause, and had not responded to Jones's second set of interrogatories or produced documents requested to be brought to the deposition. Jones sought sanctions, requesting an award of attorney's fees and an order striking Beckford's Answer.

On April 12, 2011, Jones and Beckford, through counsel, entered into a stipulation regarding the first Motion to Compel. In the stipulation, Beckford agreed to appear for another deposition on April 13, 19, and 21, 2011; would submit responses to the second set of interrogatories on April 12; and would make a reasonably diligent search for documents requested in the original

-5-

notice of deposition, including any emails to or from Jones, to or from Emily Ndela, to or from Tall, and any regarding Oak Valley Family Dental. In return, Jones agreed to take the first Motion to Compel off calendar and waive the sanctions requested. The Stipulation was approved by the bankruptcy court on April 21, 2011, in an order directing the parties to comply with all provisions of the stipulation.

On April 20, 2011, Jones's attorney filed a supplemental declaration. Counsel stated that Beckford had not provided the documents requested to be brought to the April 13 deposition, but Jones's counsel would have accepted them if brought to the deposition session on April 19. The declaration states that, at the April 19 deposition, Beckford did not produce the documents, had not responded to the interrogatories, and that she and her lawyer again walked out of the deposition after only 35 minutes. According to the deposition transcript, Beckford's attorney stated, "I don't really care if this deposition ever gets finished." Beckford Dep. 160: 16-18, April 19, 2011.

On May 12, 2011, Jones submitted a Second Motion to Compel and for Sanctions. Jones provided a sixteen-page list and explanation of alleged discovery abuses committed by Beckford and her attorney from the beginning of the adversary proceeding to May 12, 2011. The second motion sought attorney's fees caused by delays in the proceedings and an order striking Beckford's Answer.

On June 21, 2011, Beckford's counsel filed a Declaration in Opposition to Sanctions. Counsel argued that after June 2, 2011, he had complied with the discovery requests, submitting over 900 pages of documents to Jones's lawyer, and that his client had

-6-

attended the rescheduled deposition on June 14, 2011.

The bankruptcy court held a hearing on the Second Motion to Compel on June 23, 2011. The court had posted a tentative ruling, which the parties agreed that they had seen before the hearing, in which the court indicated its intent to grant the motion and impose sanctions for Beckford's failure to comply with discovery rules. At the hearing, there was a colloquy between the court and Beckford's counsel:

> WEAR [counsel for Beckford]: I was ready, willing and able, ever since the last appearance on the First Motion to Compel, to complete the discovery. I made every effort to do so. . . . My client can't pay that cash amount, and it's in essence handing the case to the plaintiff on a technicality.
>
> THE COURT: Mr. Wear, it's not a technicality. There have been a long series of delinquencies with respect to discovery, a long series of missed depositions, evasive answers to interrogatories, failure to comply with court orders regarding production of emails. There have been a long series of abuses in this matter.

Later that day, the bankruptcy court entered an Order Granting in Part Plaintiff's Second Motion to Compel and for Sanctions. The order directed Beckford to pay Jones $12,012.50, "which represents the attorney's fees and costs incurred as a result of the Defendant's repeated violation of the rules pertaining to discovery in adversary proceedings"; the payment was to be "in full, in cash, in immediately payable funds on or before July 29, 2011 at 3:00 p.m. PDT", and if Beckford failed to timely pay the sanction, the bankruptcy court would strike Defendant's Answer to the complaint.

Also on June 23, 2011, the bankruptcy court entered an Order to Show Cause why a default should not be entered against Beckford for failure to comply with discovery rules, and set a hearing on

the OSC for August 4, 2011.

On August 2, 2011, Jones's counsel filed a declaration with the bankruptcy court stating that Beckford had not complied with the court's order to pay the $12,012.58 sanction by the July 29, 2011 deadline.

The hearing on the OSC was held on August 4, 2011. Jones appeared through counsel. Beckford appeared pro se, indicating to the bankruptcy court that her attorney had sent her an email on August 2, 2011, withdrawing as her counsel. The court ruled that Beckford was now representing herself.

At the beginning of the hearing, the court observed that Beckford had sent the court an unauthorized ex parte communication consisting of a letter and emails detailing communications between Beckford and her attorney. The court returned the communication unread to Beckford. After acknowledging that Jones was aware of the communication, although Jones had not seen it, the court "will permit those materials to be filed." Hr'g Tr. 2:1-3, August 4, 2011. However, the adversary proceeding docket indicates that those materials were never refiled with the court.

Beckford attempted to fix the blame for her discovery abuses on the performance of her counsel. The court admonished her:

> Ms. Beckford, parties are bound by the actions of their counsel for good or ill, and I suppose that in retrospect, Mr. Wear took some actions in this case that appear to have been decidedly unwise but nonetheless you chose him as your attorney. You're bound by his actions. The Court had ordered the sanctions to be paid. The Court, therefore, will strike the answer and will enter your default and that's really where we are on this.

Hr'g Tr. 7:22–8:6.

On August 8, 2011, the bankruptcy court entered an order

-8-

striking Beckford's Answer and entering a default. The order provided that: (1) Jones's objection to consideration of the ex parte communication by the court was sustained; (2) Beckford's Answer was stricken, and default entered against her, for failing to pay the monetary sanctions; and (3) directing Jones to submit a request for entry of a default judgment against Beckford.

Jones filed a motion for default judgment on December 29, 2011. Regarding her request for exception to discharge for her claims under § 523(a)(4),[7] Jones alleged that she and Beckford were partners; that Beckford had breached her fiduciary duty to Jones by embezzlement; and that Beckford had absconded with the most valuable assets of the partnership, which assets she did not disclose in either her personal or corporate bankruptcy schedules. Jones presented a list detailing the damages she had allegedly suffered. The motion was accompanied by declarations from Jones, Till, Iannini, her counsel Brittain, and fifteen exhibits. Beckford submitted responses to the declarations of Jones, Till and Brittain, and twenty-one exhibits.

The bankruptcy court held the hearing on Jones's motion for default judgment on February 23, 2012. Jones was represented by counsel and Beckford appeared pro se. The court announced its intention to enter default judgment on the request for exception to discharge under § 523(a)(4). Beckford and Jones submitted on their papers. The court then announced its decision on the record:

---

[7] Since the bankruptcy court only granted the exception to discharge under § 523(a)(4), and its denial of Jones's requests under the other sections was not appealed, we discuss only Jones's allegations concerning § 523(a)(4) in this decision.

-9-

> The court . . . will enter default judgment against the Defendant under Section 523(a)(4) only in the amount of $153,276.66, finding that Mr. Brittain's motion for entry of default judgment was well taken, and that there occurred the necessary predicates for nondischargeability under Section 523(a)(4).

Hr'g Tr. 3:3-8, February 23, 2012.

On March 1, 2012, the court entered an amended judgment for Jones and against Beckford for $153,276.86 (which included the $12,012.50 sanction award). The judgment declared that the debt was excepted from discharge in Beckford's bankruptcy case under § 523(a)(4). The court denied Jones's requests for judgment under § 523(a)(2) and (a)(6) and § 727(a).

Beckford filed a timely appeal on March 7, 2012.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court abused its discretion in imposing discovery sanctions on Beckford.

Whether the bankruptcy court erred in determining that the Beckford's debt to Jones was excepted from discharge under § 523(a)(4).

## STANDARDS OF REVIEW

The imposition of discovery sanctions is reviewed for abuse of discretion. <u>Childress v. Darby Lumber, Inc.</u>, 357 F.3d 1000, 1009 (9th Cir. 2004).

In an appeal from an exception to discharge judgment, we review the bankruptcy court's fact findings under the clearly

-10-

erroneous standard and its conclusions of law <u>de</u> <u>novo</u>. <u>Honkanen</u> <u>v. Hopper (In re Honkanen)</u>, 446 B.R. 373, 382 (9th Cir. BAP 2011). However, the ultimate question of whether a particular debt is excepted from discharge is a mixed question of law and fact that we review <u>de</u> <u>novo</u>. <u>Id.</u>; <u>Searles v. Riley (In re Searles)</u>, 317 B.R. 368, 373 (9th Cir. BAP 2004) (Mixed questions of law and fact are reviewed de novo when they require the bankruptcy court "to consider legal concepts and exercise judgment about values animating legal principles.").

**DISCUSSION**

**I.** **The bankruptcy court did not abuse its discretion in imposing discovery sanctions on Beckford.**

Beckford appeals the bankruptcy court's order imposing a monetary discovery sanction against her of $12,012.50, striking her Answer, and entering a default. Although striking Beckford's Answer and deeming her to be in default in the adversary proceeding are obviously severe sanctions, we conclude that the bankruptcy court did not abuse its discretion in this decision.

Civil Rule 37(b)(2)(A), made applicable in bankruptcy adversary proceedings by Rule 7037, provides that "[i]f a party fails to obey an order to provide or permit discovery, the court where the action is pending may issue just orders [including] . . . (iii) striking pleadings in whole or in part; . . . (vi) rendering a default judgment against the disobedient party." The Ninth Circuit has long recognized a bankruptcy court's authority under Civil Rule 37(b) to strike a debtor's answer and enter default. <u>Visioneering Constr. v. U.S. Fidel. & Guar.</u> <u>(In re Visioneering Constr.)</u>, 661 F.2d 119, 122 (9th Cir. 1981)

-11-

(affirming the bankruptcy court's imposition of Rule 37 sanctions, including striking an answer and entering default, for the debtor's "obstructionist and delaying tactics" in discovery); Brunson v. Rice (In re Rice), 14 B.R. 843, 846 (9th Cir BAP 1981) (bankruptcy court may strike answer and enter default under Civil Rule 37(b) for discovery abuses).  However, as a condition of imposing such severe sanctions, the Ninth Circuit requires that the trial court find that a party's inappropriate conduct be the result of the "willfulness, bad faith, or fault." Jorgensen v. Cassiday, 320 F.3d 906, 912 (9th Cir. 2003).  And in the context of sanctions, "willfulness is disobedient conduct not outside the control of the litigant." Henry v. Gill Indus., Inc., 983 F.2d 943, 948 (9th Cir. 1993).  The bankruptcy court's determination of willfulness for Civil Rule 37 sanctions is reviewed for clear error.  Hester v. Vision Airlines, Inc., 687 F.3d 1162, 1169 (9th Cir. 2012).

In this case, the record demonstrates that Beckford was a willing participant in the particular discovery abuses that led to the sanctions.  She twice walked out of deposition sessions without completing them.  And in the depositions on February 21, April 13, and April 19, she failed to produce emails in response to Jones's requests for production without proper justification.  For example:

> BRITTAIN: Since your last session of your deposition last Wednesday, have you done anything to look for documents responsive to our request for production of documents?
>
> BECKFORD: No.
>
> BRITTAIN: Why not?

-12-

BECKFORD: I don't know.

Beckford Dep. 55:10-16, April 19, 2011.

Beckford maintained in the bankruptcy court, and now on appeal, that her obstructionist actions were taken under direction of counsel, and that she had provided most of the requested documents to her counsel, who then failed to submit them to Jones's attorney. However, she never provided admissible evidence to the bankruptcy court to substantiate that excuse, by declaration or otherwise.[8] And finally, Beckford admitted that she would not comply with the court's order to pay the initial sanction by July 29, 2011, because, she alleged, she did not have the money to do so. However, Beckford never contacted Jones's attorney or the bankruptcy court before the payment deadline, requesting an extension of time to pay. On the other hand, the court had evidence from her bankruptcy schedules that Beckford was employed at the time as a dentist by Loma Linda University. And although she was heavily in debt, she was shielded from her creditors by the automatic stay. Thus, the court and this Panel can conclude that Beckford's failure to pay the sanction was

---

[8] Even though Beckford did not submit any admissible evidence of her allegations regarding her attorney's faults, the bankruptcy court was aware of her allegations: "THE COURT: Ms. Beckford, parties are bound by the actions of their counsel for good or ill, and I suppose that in retrospect, Mr. Wear took some actions in this case that appear to have been decidedly unwise but nonetheless you chose him as your attorney. You're bound by his actions." Hr'g Tr. 7:22-25, August 4, 2011. The bankruptcy court followed the long established rule in this circuit that "the faults and defaults of the attorney may be imputed to, and their consequences visited upon, his or her client." Allen v. Bayer Corp. (In re Phenylpropanolamine (PPA) Prods. Liability Litigation), 460 F.3d 1217, 1233 (9th Cir. 2006) (quoting W. Coast Theater Corp. v. City of Portland, 897 F.2d 1519, 1523 (9th Cir. 1990)).

-13-

within her control. The bankruptcy court did not clearly err in concluding that Beckford's sanctionable conduct was willful. Rodriquez v. Holder, 683 F.3d 1164, 1171 (9th Cir. 2012) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.")

Before entering a "severe sanction," including striking an answer and directing entry of default, the Ninth Circuit requires consideration of the following criteria:

> We have constructed a five-part test, with three subparts to the fifth part, to determine whether a case-dispositive sanction under Rule 37(b)(2) is just: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Jorgensen v. Cassiday, 320 F.3d 906, 912 (9th Cir. 2003) (quoting Malone v. U.S. Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987)). The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions. This "test" is not mechanical. It provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow[.]

Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007); see also Hester, 687 F.3d at 1169-70 (applying these factors in striking an answer and entering a default).

The first two criteria focus upon the public interest in expeditious resolution of litigation, and the trial court's interest in docket control. Both of these factors support the imposition of the sanctions under these facts. Jones documented sixteen pages of discovery abuses by Beckford that had inordinately delayed the adversary proceeding. Beckford's conduct

-14-

significantly impeded resolution of this action, caused delay, and prevented the bankruptcy court from adhering to its trial schedule.

The third criterion requires consideration of any prejudice to the party seeking sanctions. A party is prejudiced if the opposing party impairs its ability to go to trial. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990). There is evidence of prejudice to Jones here. Beckford failed to provide responses to discovery requested by Jones, and thus Jones was prejudiced in her preparation for trial.

The fourth criterion requires the trial court to consider the public policy favoring decisions on the merits. The bankruptcy court's decision to strike the Answer and enter default did not end the dispute. The court informed Beckford that she would have the opportunity in the final default hearing to present her evidence and to cross-examine any witnesses called by Jones. In this procedural respect, then, the bankruptcy court's ultimate decision was "on the merits."

Finally, before resorting to severe sanctions, a trial court must ponder the availability of less drastic sanctions. The Ninth Circuit instructs that this criterion has three components: whether the trial court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of different sanctions. New Images of Beverly Hills, 482 F.3d at 1096.

Beckford was afforded clear warnings from the bankruptcy court on multiple occasions that striking the Answer and entering default were possible sanctions for her continuing discovery

-15-

abuses. Indeed, Jones had requested these severe sanctions in both the First and Second Motions to Compel. Jones withdrew the First Motion based on a stipulation by Beckford that she would promptly cooperate in discovery, but she failed to do so. The bankruptcy court imposed the lesser sanction of a monetary award of $12,012.50, and informed Beckford that it would not impose the more severe sanctions of striking the Answer and entry of default if Beckford timely paid that monetary sanction. Again, Beckford did not pay.

We also note that, even in the face of Beckford's recalcitrance, the bankruptcy court did not import the even more severe sanction under Civil Rule 37 — the immediate entry of a default judgment in Jones's favor. The court could have imposed this more draconian penalty in light of Beckford's violation of numerous court orders (the general discovery orders, the order approving the stipulation on April 21 where the court again ordered compliance with the discovery requests, and the order of June 23, 2011 imposing monetary sanctions). <u>Thompson v. Hous. Auth. Of Los Angeles</u>, 782 F.2d 829, 831 (9th Cir. 1986) (willful disobedience of court orders is grounds for entry of default judgment). Instead, the bankruptcy court adopted a measured response to the many infractions, with frequent advance warnings of the likely consequences of failure to comply with the various orders, then imposing a financial sanction, then warning that a more severe sanction of striking the Answer and entering default would follow if Beckford failed to comply with the order for the monetary sanction. Finally, the bankruptcy court stayed its hand from imposing the ultimate sanction of default judgment and

-16-

indicated that Beckford would still have the opportunity to contest a default judgment in a subsequent hearing.

In sum, we conclude the bankruptcy court did not abuse its discretion in striking Pryor's Answer and ordering entry of default.

**II.** **The bankruptcy court did not err in determining that Beckford's debt to Jones was excepted from discharge under § 523(a)(4).**

Beckford also challenges the bankruptcy court's ultimate decision to except her debt to Jones from discharge. Beckford's arguments lack merit.

Section 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." In an action under § 523(a)(4), a creditor must establish: (1) that an express trust existed between the debtor and creditor; (2) that the debt was caused by the debtor's fraud or defalcation; and (3) that the debtor was a fiduciary to the creditor at the time the debt was created. Otto v. Niles (In re Niles), 106 F.3d 1456, 1459 (9th Cir. 1997); Nahman v. Jacks (In re Jacks), 266 B.R. 728, 735 (9th Cir. BAP 2001).

The evidence submitted to the bankruptcy court established that a partnership relationship existed between Jones and Beckford. In her declaration, Jones asserted that she and Beckford were partners in the dental practice in their individual capacities. Beckford never contradicted this statement with admissible evidence. In the First Amended Complaint, Jones asserted a partnership existed between Jones and Beckford. After entry of default, the longstanding, general rule is that well-pled allegations in the complaint are deemed to be true. Fair Housing

-17-

of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002); Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (citing Pope v. United States, 323 U.S. 1 (1944)). Finally, the evidence showed that Beckford sent Jones a Schedule K-1 tax form on March 24, 2008, which is intended to detail a "Partner's Share of Income," I.R.S. Form 1065, accompanied by a letter from Beckford to Jones that stated: "Dear Partner: . . . This schedule summarizes your information from the partnership."

State law determines when an express trust exists. Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir. 1986). Beckford and Jones organized and operated their partnership in California and, under California state law, an express trust exists between partners. Id. at 796.

Did the existence of a partnership render Beckford a fiduciary to Jones? A partner is in a fiduciary to fellow partners. Galardi v. State Bar, 739 P.2d 134, 138 (Cal. 1987); see also, Cal. Corp. Code § 16404 (outlining fiduciary duties owed by partners to each other).

> [P]artners are trustees for each other, and in all proceedings connected with the conduct of the partnership every partner is bound to act in the highest good faith to his co-partner and may not obtain any advantage over him in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind.

Leff v. Gunter, 658 P.2d 740, 744 (Cal. 1983)(quoting Page v. Page, 359 P.2d 41, 46 (Cal. 1961)).

A defalcation occurs for purposes of § 523(a)(4) through the "misappropriation of trust funds or money held in a fiduciary capacity; failure to properly account for such funds." Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1186 (9th Cir. 1996). A

-18-

defalcation also exists when a fiduciary cannot account for the trust res, commingles funds with trust funds, and uses the company's money for his personal benefit. Id. at 1186-87. Defalcation includes "failure of a party to account for money or property that has been entrusted to them." Woodworking Enters., Inc. v. Baird (In re Baird), 114 B.R. 198, 204 (9th Cir. BAP 1990) (emphasis added).

Jones alleges the elements of defalcation in her First Amended Complaint.

> [Beckford] breached her fiduciary duty to the plaintiff with respect to [partnership assets]. The plaintiff . . . is informed and believes and thereon alleges that the defendant has sold or otherwise disposed of such assets for her own benefit and has failed to protect such assets and make them available to creditor MATSCO in accordance with that creditor's security interest and agreement.

First Amended Complaint at ¶ 25. This allegation is deemed true. Combs, 285 F.3d at 906.

On this record, we conclude that, based on the allegations in the well-pled complaint that are deemed true, the evidence presented to the bankruptcy court, and Beckford's admissions, Jones established the requirements for an exception to discharge of her claim against Beckford under § 523(a)(4): Beckford was her partner and an express trust existed between Beckford and Jones; the debt was caused by Beckford's fraud or defalcation; and Beckford was a fiduciary to Jones at the time the debt was created. The bankruptcy court therefore did not err in entering default judgment in favor of Jones excepting her claims against Beckford from discharge.

-19-

**CONCLUSION**

We AFFIRM the judgment of the bankruptcy court.